## J. B. CRANFILL ET AL. v. S. A. HAYDEN.

### Decided February 24, 1900.

1. **Conspiracy and Libel.**

Although the object of a combination of persons be lawful, yet if the means adopted and used to bring about the desired end be unlawful and libelous, the parties are none the less conspirators.

2. **Same—Charge Where Several Defendants.**

Where the petition charged several defendants with a conspiracy to libel and injure plaintiff, the charge should have submitted conspiracy to the jury (there being some evidence tending to support it) as an issuable fact, limiting the acts and declarations of the defendants, in case the jury should find against the charge of conspiracy, to the particular defendants whose acts and declarations were proven, and confining the liability of each to the damages resulting from his own acts.

3. **Libel—Privileged Matter—Church Convention Proceedings.**

Proceedings of a General Baptist Convention denying to one appointed a member thereof by his local church any rights as a member and published in the usual and ordinary way, are privileged communications, such convention being a sovereign independent body, not exercising delegated powers nor acting in a representative capacity, and therefore having the right, although a member's election should be valid and his credentials regular, to refuse him membership on any grounds that might seem to it proper and sufficient.

4. **Same—Truth of Charges in Support of Good Faith.**

Where, in an action for libel, defendants pleaded that the matters and charges alleged as libelous were privileged communications made in good faith, they should have been permitted to show the facts upon which their charges had been made, to prove good faith, even though they had not pleaded the truth of the charges as a justification.

5. **Same—Charge of Court—Malice and Presumption of Falsity.**

Where, in an action for libel, the defense pleaded is that the statements alleged to be libelous were privileged communications made in good faith, the charge of the court should not instruct the jury that the law presumes the charges false, nor should it indicate that it is the duty of the jury to find that the publication was malicious.

6. **Same—Malice and Sense of Duty.**

In an action of libel against defendants for their statements and proceedings in excluding plaintiff from membership in a church convention, it was error to charge the jury to find against defendants if malice, consisting in a desire growing out of ill will towards plaintiff to injure him, entered into the motive whch prompted their action, since the fact of their entertaining such a feeling should not be held to prevent them from discharging what they honestly believed to be their duty to themselves, the convention, and the church.

7. **Same—Evidence of Parliamentarians.**

Plaintiff having alleged, and having been permitted to prove, that the proceedings of a Baptist church convention excluding him from membership were harsh, unfair, and irregular, defendants should have been permitted to prove by men shown to be experienced parliamentarians, and who were present during the proceedings, that they were in accordance with the rules and regulations as understood and adopted by Baptists in their general bodies everywhere; but extracts from parliamentary authors were not admissible in evidence for that purpose.

8. **Same—Charge Ignoring Defense of Privileged Communication.**

A plea of privileged communication presenting a perfect defense to an action of libel and supported by evidence should not be ignored in the charge because the defendants failed to plead the truth of the alleged libelous matter in justification.

**9. Same—General and Special Damages—Pleadings.**

Damages to the character of plaintiff, a Baptist minister and editor of a religious paper of that denomination, by reason of his being excluded from membership in a Baptist General Convention on charges of personal unworthiness and hostility to the work of the convention, need not be specially alleged or proven, but injury to his newspaper business was a matter of special damage requiring to be specially alleged and proved.

**10. Same—Evidence Held Not Secondary.**

In an action for libel, where the printed minutes of a church convention and its proceedings as published in a church paper are alleged to be the libelous matter, copies of such minutes and paper are admissible as originals.

**11. Same—Custody of Convention Papers.**

Where papers of a church convention, such as committee reports, after having been acted on and published in its minutes, appear to have no further useful purpose and to have gone into the hands of its secretary, notice to produce such papers, served upon the attorneys of the secretary, who is one of the defendants in the suit, will warrant the admission of secondary evidence thereof if the originals are not produced, at least as to that defendant, and it seems that as to papers of such transient character, the courts will relax the rule requiring the original to be produced or accounted for.

APPEAL from Dallas. Tried below before Hon. RICHARD MORGAN.

*Henry & Henry, Crane & Greer, G. G. Wright, Eric Gambrell,* and *W. H. Jenkins,* for appellants.

*Crawford & Crawford, Jos. E. Cockrell, S. H. Russell, D. A. Holman,* and *E. B. Muse,* for appellee.

FINLEY, CHIEF JUSTICE.—This suit was instituted by S. A. Hayden in the District Court of Dallas County, against J. B. Cranfill, J. B. Gambrell, J. M. Robertson, D. G. Wooten, G. W. Truett, H. C. Gleiss, C. C. Slaughter, T. J. Walne, J. B. Riddle, L. M. Mays, W. H. Jenkins, J. M. Carroll, L. R. Millican, W. R. Maxwell, F. W. Freeman, R. T. Hanks, J. C. Burkett, Bennett Hatcher, J. B. Kimbrough, R. A. Lee, G. W. Baines, A. E. Baten, J. C. Gentry, and certain other persons as to whom the cause was voluntarily dismissed. The suit is for damages on account of alleged libelous publications. A recovery is sought for actual and exemplary damages.

The petition represents that the plaintiff was a preacher of the gospel, belonging to the Baptist denomination of Christians, and the editor and proprietor of a religious newspaper, devoted to the interests of that denomination and the cause of the Christian religion. It is alleged that each and all of the defendants are members of churches in this State of the Baptist denomination, though not members of the same local church organization. It is alleged that each and all of the churches of the Baptist denomination are independent and sovereign, there being no general superior body clothed with jurisdiction to supervise and control the actions of the various churches or their members. It is shown that there existed a State Baptist organization, known and

designated as Baptist General Convention, which is a corporation created by and under the laws of the State. That its objects are missionary and educational, the promotion of harmony of feeling and concert of action among Baptists, and a system of co-operative measures for the promotion of the interests of the Redeemer's kingdom. Its membership is composed of messengers from regular Baptist churches, and associations of Baptist churches, and missionary societies co-operating with the convention. That the church of which the plaintiff was and is a member, and the association of churches to which it belonged, were in harmony and good fellowship with the regular Baptist churches throughout the State and with the Baptist General Convention. That the Baptist General Convention met at San Antonio in November, 1897, and that the plaintiff and each and all of the defendants were duly constituted messengers to that convention, and as such were entitled to seats in the convention, and to participate as members in the proceedings in that body.

It is shown that his right to membership and participation in said convention was challenged, and that he was prevented from exercising his rights as a member of said convention. It is alleged that the challenge related to his personal conduct and character; that the validity of his credentials as a messenger were not brought in question, and that the Baptist General Convention was without jurisdiction as to the subject matter, the church to which he belonged alone having jurisdiction and authority over his personal conduct. It is charged that this challenge was in writing; that it was libelous in character, and that it was published, first, by the reading of it to the large membership of the convention assembled; second, printing it in the minutes of the convention and distributing copies thereof over the State and in Dallas County; and third, by publishing it in the Baptist Standard, a newspaper published at Waco, and widely circulated over the State, including Dallas County. It is charged that said written challenge contained serious, damaging, and false accusations against him, reflecting upon his character as a man, a Christian gentleman, and Baptist minister. That this challenge was referred to a committee on challenges, and this committee, without investigating the truth of the charges, made a majority report sustaining the challenge, and a minority report against the challenge. That attached to the minority report was a defense to the charges, prepared by the plaintiff. It is alleged that the minority report, including the defense of the plaintiff, entitled "My Reply," were excluded from each and all of the publications, and that had they been published they would have tended to relieve and exculpate him from the charges made.

It is charged that all of the defendants published or caused the publication of the libelous matter, and it is further alleged that said libelous publications were made in furtherance of the objects of a conspiracy formed by and between said defendants to exclude the plaintiff from the convention, break down his influence and power as a Baptist

minister and editor of a Baptist newspaper, etc. It is charged that the publication of the libel injured his character as a man and Baptist minister; caused him to be deprived of his membership in said Baptist General Convention, and the rights and privileges incident thereto, and injured and impaired the value of his newspaper business, etc., to his actual damage $50,000. Express malice in the publications is charged as the basis for the claim of exemplary damages, in the sum of $50,000. The petition is very lengthy, and this statement is only designed to set forth the general essential features of the plaintiff's cause of action, as asserted by his pleadings.

The defendants answered by plea of not guilty, and plea of privileged communication.

In the plea of privilege it is substantially alleged that L. M. Mays, and all of the other defendants and plaintiff, Hayden, were messengers to the Baptist General Convention at San Antonio in the year 1897. That Mays was sent as a messenger by a Baptist association, known as the Austin Association; that he, as such messenger, presented to the convention the challenge alleged to be libelous; that the challenge was submitted to the appropriate committee, which reported upon it, and that the defendants voted for the report of the committee, which recommended that said Hayden be denied a seat in the convention; that in presenting the challenge, making the report thereon and in voting on the report, and in all other publications charged against them, they acted in good faith and without malice and in the honest belief of the truth of the allegations contained in said challenge, and that it was their duty to the convention, themselves, and the Baptist denomination so to do. That the challenge and report thereon were presented at a regular business meeting in session, and that they were all regularly constituted messengers or delegates to said convention. The plea alleged, substantially, that everything done in the premises by the defendants was done in the honest belief in the truth of the matters contained in the challenge, and in good faith, without malice or ill will toward said Hayden, and in the honest belief that it was necessary for the protection of the interests of said convention, themselves, and the Baptist denomination.

The plaintiff's pleadings set out in full the challenge, constituting the alleged libel, and the majority and minority reports thereon, including the defensive paper prepared by the plaintiff, Dr. Hayden.

The challenge did not question the validity or regularity of Dr. Hayden's selection as a messenger to the convention, but assailed his eligibility to membership in that body by reason of alleged hostility to its works and objects, public abuse and misrepresentation of its officers and agents, and personal unworthiness, as manifested by his course of conduct as stated. The minority report, with the attached reply of Dr. Hayden to the charges, questioned the jurisdiction of the convention over the subject matter of the challenge, sought to refute the charges,

and to justify Dr. Hayden's course of conduct toward the convention, its officers and agents, and his Baptist brethren.

The case was tried before a jury, and resulted in a verdict and judgment for plaintiff against all the defendants for $20,000 as actual and $10,000 as exemplary damages. The defendants have appealed.

*Opinion.*—The first contention made by the appellants is that the charge of conspiracy was not proven, and that the court erred in admitting in evidence the declarations and acts of certain defendants made in the absence of the other defendants, and in refusing to limit the effect of such evidence to each defendant whose declarations or acts were proven.

If the premise be conceded that there was no evidence of a conspiracy, there can be no question but that the declarations or acts of one defendant, occurring in the absence of the other defendants, should be treated only as evidence against the particular defendant whose declarations or acts they were. It would be in contravention of the plainest principles of justice to hold one responsible for the declarations or acts of another, made or occurring in his absence and without his authority, when they had not collectively assumed the attribute of individuality by conspiring together for the accomplishment of a common object. 3 Greenl. on Ev., 6 ed., sec. 94.

On the trial of the case several witnesses were permitted to testify, over objections of the defendants, to declarations and acts of particular defendants occurring in the absence of other defendants. Witnesses Parks, Hayden, and Anderson were allowed to fully detail all that was said and done before the committee of challenges in relation to the challenge against Dr. Hayden. Some of the persons who composed that committee and took part in its proceedings are made parties defendant in this suit, but the larger number of the defendants were not members of the committee and were not present during its proceedings, or the occurrences testified to. Witnesses were permitted to testify to declarations of certain defendants, some made before and some after the convention, to the effect that it was their intention to keep Dr. Hayden out of the convention. Letters written by Dr. Cranfill to Mr. Cason, of Huntsville, and Mr. Rowell, of Jefferson, prior to the convention, manifesting antagonism and hostility toward Dr. Hayden, and a determination to force an issue with him, were allowed in evidence. The proceedings of the Baptist General Convention in relation to the challenge of Dr. Hayden as published in the Baptist Standard, a Baptist denominational newspaper, then exclusively owned and edited by Dr. Cranfill, were read in evidence. Dr. Hayden was allowed to testify to a difficulty between him and Dr. Hanks, occurring long prior to the San Antonio convention, occasioned by a publication made by Dr. Hayden, charging Dr. Hanks with scandalous conduct with women.

The defendants asked the court to instruct the jury that the allegation of conspiracy had not been proven, and that the jury should not

consider against any of the defendants, declarations of other defendants in which they did not participate. In other words, the jury should not hold any defendant responsible for anything done or said, except his own language or conduct. This charge was refused, and nowhere in the charge of the court is the allegation of conspiracy mentioned. The charge submits the case to the jury as though conspiracy had not been alleged, and directed them to find whether the defendants or any of them took part in publishing or causing publication of the libel. Further, that the plaintiff would be entitled to recover only against such of the defendants as took part in publishing or procuring the publication of the libel. There are three distinct publications of the libel alleged: the reading of the challenge to the membership of the convention, its publication in the minutes of the convention, and its publication in the Baptist Standard. Each of the alleged publications of the libel constituted a cause of action, and while they may all be embraced in one suit and damages recovered for all the injuries inflicted by the several publications, this is permissible only where the several causes of action are common to all the defendants. Hays v. Perkins, 54 S. W. Rep., 1071; Newell, Defam., 2 ed., 382, sec. 42.

We have carefully examined and weighed every item of evidence contained in the record, and we find ourselves unable to concede that there was no evidence tending to prove the conspiracy as alleged. We think it unnecessary, if not improper in view of the disposition to be made of the case, to discuss the details of the evidence. It is sufficient to say that there was some evidence tending to show that there was a common desire among the defendants to exclude Dr. Hayden from the Baptist General Convention, and to finally and entirely eliminate him and his influence from the work of that body; that there was a common design to accomplish that end, and that they acted in harmony and together in the adoption and use of the means to accomplish the object. Even though it be conceded that the object of such a combination be lawful, yet, if the means adopted and used to bring about the desired end be unlawful, the parties would be none the less conspirators. 3 Greenl. on Ev., secs. 90-95. Although the prime object may not have been to libel Dr. Hayden, still, if the publication of libelous charges against him was a means employed to accomplish the end, upon which the defendants had associated and joined their individual efforts, they should be held liable as conspirators in the publication of the libel. While we hold that there was evidence tending to show a conspiracy, we do not regard the evidence as being conclusive in its probative effect. It was sufficient to go to the jury as tending to prove the fact of conspiracy, the existence of which it was the duty of the jury to determine. The court should have treated it as an issuable fact.

But it is insisted by appellee that appellants have no just ground of complaint at the manner in which the court treated this phase of the case, because the evidence showed that each of the defendants personally took part in causing the publication of the libel, and the charge

that they conspired together was thereby rendered immaterial. If it be admitted that the evidence showed that each appellant took part in some one of the three publications alleged, it is most certain that it was not shown, aside from the theory of conspiracy, that each defendant participated in all three of the publications. If the conspiracy was not established, then each defendant could lawfully be held liable only for the damages caused by the libelous publication with which he was connected by the evidence. The charge did not so confine their liability. In the charge of the court to the jury, it stated, "While there has been a great deal of the testimony introduced, the court has not permitted any of it to be introduced for any other purpose than to enable us to properly decide the few issues which, under the pleadings, we are called upon to decide, and in considering the testimony it should be considered solely with reference to its bearing on those issues."

The first issue submitted for the decision of the jury was, "whether the defendants or any of them took any part in publishing the libel, or in causing it to be published." Upon this issue the jury was further instructed as follows: "Only one of the defendants in this case signed his name to the libelous paper, but it is not necessary to the publication of a libel that one should sign his name to it. Everyone who takes any part in publishing a libel is equally responsible with the author of the libel, and everyone who requests, procures, or commands another to publish a libel is equally as responsible as though he had published it himself; by so doing he takes part in the publication of the libel. And such request need not be express, but may be inferred from the defendant's conduct, if his conduct is such as to fairly justify such an inference." It will be seen that the court treats the three publications as one libel; tells the jury that all the evidence is material to the issues they must determine, and in no way limits the declarations and the acts of particular defendants. Under this character of submission, may the jury not have concluded that as each of the defendants was shown to have participated in one of the publications, that each should be held responsible for all of the publications, regardless of the charge of conspiracy? The court so treated the matter in the admission of testimony and in his charge, and it is quite natural that the jury should have followed in the same channel. The court should have treated the charge of conspiracy as an issuable fact to be determined by the jury; limited the acts and declarations of the defendants, in case the jury should find against the charge of conspiracy, to the particular defendants respectively whose acts or declarations were proven, and in the event of such a finding, confined the liability of each defendant to the damages resulting from his own acts.

It is urged that the court erred in refusing special charges asked, embracing the proposition that the publication of the challenge was conditionally privileged, and that the defendants could not be held liable in damages therefor unless they were actuated by express malice;

and in failing to submit the issue of good faith raised by the plea of privilege and the evidence offered in support of it. Along the same line, complaint is made at the action of the court in refusing to admit evidence tending to show the truth of the charges contained in the challenge, offered for the purpose of showing that the defendants acted in good faith, believing the charges to be true, and not offered in justification of the alleged libel.

The question which first arises is, was the publication of the challenge a privileged communication? This is a question of law for the decision of this court, and was simply a question of law for the decision of the trial judge in the court below. Cotulla v. Kerr, 74 Texas, 94; Newell on Libel, 391, 392, sec. 9. Reference is had to privileged communications of a qualified or conditional character. The occasion of the communication is that which gives character to it as privileged or not. Runge v. Franklin, 72 Texas, 588. The occasion is the entire group of circumstances surrounding the act, including the actor, the person acted upon, the character of the act, the manner of effecting the act, and the motive and consequences of the act. Townsend on Libel, sec. 50. To be privileged, the communication must be made upon a proper occasion, upon a proper motive, and must be based upon reasonable grounds. When so made in good faith, no recovery can be had without proof of express malice. Newell on Libel, 391, sec. 7. The person making the communication or publication must have an interest in the subject matter, and there must be a corresponding interest in the person or persons to whom the publication is made, and the communication must be made upon reasonable grounds and in good faith under a sense of duty. When a publication is made of defamatory matter under such conditions it is privileged and protected, whether true or false. Id., 388, 389, secs. 1, 2. The essential elements of a privileged communication are such, therefore, as to require the judge in determining the question of privilege to look to all the circumstances developed by the evidence touching the matter, including the expressions contained in the alleged libel, whether excessively defamatory or not, and the manner of publication, whether fair or partial and unjust. Id., 392, sec. 11.

Applying these basal principles to the case in hand, it is clear that, to consider the challenge as privileged, it is necessary that the convention must have had authority over the subject matter of the challenge, and a right to take action thereon, and those charged with the publication must have acted under a sense of duty in the premises. The occasion would not justify the publication, unless the convention had such authority and jurisdiction. Belo v. Wren, 63 Texas, 686; Holt v. Parsons, 23 Texas, 19. By accepting credentials to the Baptist General Convention and applying for admission as a member, Dr. Hayden must be held to have assented and submitted himself to the exercise of all lawful authority which pertained to that body in relation to the matter of its own membership. If the matter presented to the conven-

tion by the challenge was pertinent to the exercise of a jurisdiction which that body possessed over the subject of its membership, and the members of that body charged with its publication acted in good faith under a sense of duty, upon reasonable grounds, believing the charges to be true, it must be held privileged. Townsend on Libel, secs. 233, 237. Did the convention have authority and jurisdiction in the premises?

The Baptist General Convention is a private corporation created by and under the laws of the State, with objects declared to be missionary and educational, the promotion of harmony of feeling and concert of action among Baptists, and a system of operative measures to further the interests of the Christian religion. The charter of the corporation is not before us, and, as a corporation, we must regard it in the light of the exercise of the usual powers, privileges, and functions conferred by statute. Our statute authorizes the creation of corporations for such objects, and grants the usual corporate powers, but provides that the corporate officers shall not usurp or exercise the functions of the officers in charge of the spiritual affairs of any society. Rev. Stats., art. 713. One of the products of the corporate body is an annual State convention of Baptists, manifestly inaugurated to further the objects of the corporation. This convention has for the basis of its organization and actions a constitution. This constitution sets forth the objects to be such as heretofore recited as the objects of the corporation, and provides for an annual meeting of the body. Article 1, section 2, provides: "This body shall be composed of messengers from regular Baptist churches, and associations of Baptist churches and Baptist missionary societies co-operating with the convention." Sections 2, 3, and 4 fix the number of messengers which each of the churches, associations of churches and missionary societies shall be entitled to send to the annual convention. Article 2, section 3, declares: "The convention does not have, and shall never attempt to exercise, a single attribute of power or authority over any church, but it cheerfully recognizes the absolute sovereignty of the churches." In article 8 it is provided: "This constitution shall not be changed or amended unless the change or amendment be offered on the first day of the annual session and lie over to some subsequent day, and then only by a two-thirds majority." From these provisions of the organic law of the convention we must determine its nature, functions, and powers, there being no other lights to be seen in the record. It does not appear that the convention is a body exercising delegated powers. While its membership is made up of persons selected by churches, associations of churches and missionary societies co-operating with the convention, as an institution, it nowhere appears that such messengers are to perform delegated duties, are in any way bound to conform to instructions of the bodies naming them as messengers, or have any right whatever to bind such bodies. On the other hand, it expressly appears that this body of messengers from the many churches has no power or right whatever to bind any church by its

action, and is prohibited from ever attempting to do so. We must then understand the annual convention to be a deliberative body composed of individuals voluntarily named by the several churches, associations of churches, and missionary societies, which co-operate in work, without authority extending beyond its membership. It has no body superior to it to control its deliberations and proceedings, and none subordinate to be bound thereby. If, then, it has no supervisory power, and exercises no delegated powers, and is not representative, it must be an independent sovereign body, under the limits only of its own organic law. Its organic law provides that the messengers shall be selected by the bodies before named, and it was doubtless presumed that good and suitable men in harmony with the purposes in view would be named by such organizations. This method was probably chosen in order to fix the membership within proper limits, secure the general co-operation of all these Baptist organizations, and obtain the best representatives of the Baptist denomination from every section of the State as members of the convention. There is nothing in the constitution, however, renouncing the right and power of the convention to control its membership. That such deliberative bodies have exclusive authority and jurisdiction to determine who may exercise the rights and privileges of membership, must be conceded. Jarrell v. Sproles, 20 Texas Civ. App., 387.

The collective wisdom, judgment, and integrity of such assemblies generally is the only safeguard against the abusive exercise of such power. Such bodies must be treated as possessing the inherent right and authority to protect themselves in the matter of their membership, and in the exercise of that right and authority they are answerable alone to their own consciences and to general public opinion. They are not limited to the power to investigate and determine the validity of the election and regularity of the credentials of one claiming membership, as is contended by appellee, but they have the power to refuse him membership upon any grounds which may seem good and sufficient to the body itself.

The challenge in question charged Dr. Hayden with a long continued antagonism and obstruction to the work and objects of the convention, acts of insubordination as a member, and the wanton publication of slanderous charges against the officers and agents of the convention in their official relations, and in connection with such specifications charged that he was unworthy in moral character, and that his continued membership in the convention would be a menace to the laudable and religious objects of that body. Should it be said that the convention had no authority to look into and take action upon such a matter? Must the good work of such bodies be obstructed and imperiled for want of authority to purge their membership of obstructing and unfriendly elements? It seems to us clear that the convention had full authority and jurisdiction in the premises; that its members were interested and charged with a duty in relation to the matter, and

we can not regard the expressions contained in the challenge as so excessively defamatory as should at once stamp it as malicious and unjust. and strip it of the privileged character.

Neither are we prepared to hold that the failure to publish the minority report and Dr. Hayden's defensive paper along with the challenge and the report of the majority of the committee thereon, was such an ex parte and unfair proceeding as to justify its condemnation as malicious and unprivileged, as a matter of law. There is a question in the evidence whether the minority report and Dr. Hayden's paper as a part thereof, was ever offered to be read to the convention, or was lodged with any member of the convention charged with the duty of presenting it.

It further appears that Dr. Hayden's paper contained serious and defamatory charges against members of the convention, its trusted officers and agents. To refrain from the publication of such a paper, should not, as a matter of law, be regarded as conclusive evidence of malice and be made the basis of the exclusion of the defense of privileged communication. The evidence as to the manner of publication was, however, proper to go to the jury on the issue of express malice. It follows from these conclusions, that the court erred in not holding the occasion to be privileged, and in failing to submit to the jury the issues of fact properly arising under the plea of privilege. What has been said as to the question of privilege has been directed at the publication of the challenge to the body of the convention. The same principles apply to the publication of the minutes of the proceedings of the convention, and the publication of such proceedings in a newspaper shown to have been devoted to the interests of the Baptist denomination in this State, published as the proceedings of this important Baptist body, if the proper basis in the evidence be furnished, although the paper was owned and controlled by one individual.

The contention of appellee that the charge of the court, in effect, gave the defendants the benefit of their plea of privileged communication is not well founded. There were in fact only these issues left open for the decision of the jury: (1) Did the defendants or any of them participate in the publication of the libel? (2) What was the actual damage sustained by the plaintiff? (3) And as the basis of exemplary damages, were the defendants actuated by express malice? There was left but one chance of escape from damages under the charge, and that was, that they did not participate in the publication.

Should the court have admitted testimony offered by defendants tending to prove the truth of the charges contained in the alleged libel, tendered in support of the defense of privileged communication, and not in justification? The objection upon which the court excluded the testimony was, that the defendants had not pleaded the truth of the alleged libel as a justification. The plaintiff had introduced evidence tending to show bad feeling and ill will on the part of the defendants toward him for the purpose of proving that they were moved and actuated by ex-

press malice in the publication of the libel. The court permitted the defendants to testify that they acted in good faith, believing the charges to be true, under a sense of duty and without ill will toward Dr. Hayden; but closed their lips as to the reasons or grounds upon which their good faith and belief rested, upon the ground that a failure to plead the truth of the defamatory charges in justification necessarily cut them off from this·proof. Under our statute the defendant may plead as many several matters as he may think necessary to his defense, and it is only required that he shall file them at the same time and in due order. Rev. Stats., art. 1262. They are not required to be consistent defenses. Wildan v. Texas Meat Co., 65 Texas, 487. The defense of privileged communication is a perfect defense to an action for libel, and not a plea in mitigation of damages. It was certainly admissible for the defendants to prove every essential element to the defense of privileged communication. Good faith and honest belief in the truth of the charges. as has been seen, is an important and necessary element in such a defense. Upon what principle may the defendants be permitted to testify that they did act in good faith, under such honest belief, and then be refused the privilege of showing the basis of their good faith and belief? What better way is there to establish good faith and honest belief than to show a reasonable basis upon which they were founded? It was not sought to show the truth of the libelous charges as in itself a defense, but only in support of the defense of the plea of privilege. The objection to the evidence is not sound, and the court erred in sustaining it. Printing Co. v. Copeland, 64 Texas, 359; Railway v. Richmond, 73 Texas, 575; Edwards v. Chandler, 14 Mich., 475; Chapman v. Caller, 14 Pa. St., 365; Bush v. Presser, 11 N. Y., 347; Bradley v. Heath, 12 Pick.. 164, 165; Remington v. Congdon, 2 Pick., 315; Com. v. Clapp, 4 Mass.. 169.

It is complained that the charge of the court in that portion which deals with Dr. Hayden's exclusion from the convention as a matter which might be considered in estimating damages, practically instructed the jury to find that the publication was maliciously made. The charge instructed the jury that if they found that the convention was induced to take that action by reason of its belief in the truth of the charges contained in the challenge, which they were told were libelous, and which the law presumed to be false, "and which you have found to have been maliciously made," then the jury might consider his exclusion from the convention in estimating the damages. The charge was erroneous in two particulars. The jury should not have been told, in this·connection,. that the law presumed the charges false, and it should not have been indicated that it was their duty to find that the publication was malicious. The truth of the charges was not an essential element to the defense under the plea of privileged communication. Such presumption does apply in ordinary actions of slander and libel, but when it is shown that the occasion and the charges made were of a privileged nature, that presumption is not of material effect. As to the second objection, the issue

of malice, where there is a plea of privileged communication and evidence offered in support of it, no presumption of malice arises, and it is always an issue of fact to be determined by the jury upon the evidence. Townseid on Libel, sec. 209.

The charge of the court upon the subject of express malice, and the refusal of special charges in relation to it, is further complained of. The court defined express malice to consist in a desire, growing out of ill will toward the plaintiff, to injure him, or in a reckless disregard of the effects of the libelous publication upon the plaintiff. It then instructed them that the actuating motive may have been complex, and that they need not determine that the defendants were prompted solely by malice, but that they should be found guilty if malice, as defined, entered into the motive which prompted their action. The defendants asked an instruction to the effect, that if the defendants acted in good faith and under a sense of duty, believing the charges to be true, that the mere fact that they did not like the plaintiff or were unfriendly to him, would not render them liable in damages. There was some evidence of unkind state of feeling of the defendants, or some of them, toward the plaintiff, but they testified that this did not prompt their action; that they were moved by a sense of duty to the convention, its objects and work, and to the Baptist denomination. They denied personal ill will toward him, but generally admitted that they disliked him on account of the course he had pursued in relation to the matters covered by the charges contained in the challenge. The fact that they entertained such a feeling should not be held to prevent them from discharging what they believed to be their honest obligations as messengers to the convention, and this point was not properly guarded by the charge, and the jury may have attached undue importance to the evidence of their unfriendliness toward the plaintiff.

The court excluded the evidence of Drs. Buckner and Kerfoot, shown to be experienced parliamentarians and familiar with the standard authors of parliamentary works, recognized by the Baptists of Texas and elsewhere, tending to show that the manner of the exclusion of Dr. Hayden from the convention, which proceeding the witnesses personally observed, was in accordance with the rules and regulations as understood, interpreted, and adopted by Baptists in their general bodies everywhere. The objection urged was that the testimony was immaterial and irrelevant. Plaintiff alleged, and was permitted to prove, as evidence of malice, that the proceedings against him were conducted in a harsh and unfair manner. That the committee on challenges made a report sustaining the charges against him without investigating or hearing evidence of their truth, and that defensive matter in his favor was excluded from the body of the convention. If such evidence may be introduced to show a want of just regard for the rights of the plaintiff, and bad feeling as the inciting cause of the publication of the libel, common fairness would demand that the defendants be permitted to rebut it and show that the proceedings were regular and in compliance with the par-

liamentary rules and usages generally adopted by Baptists in their general bodies. The various extracts from such parliamentary authors tendered in evidence, however, were properly excluded. 1 Greenl. on Ev., sec. 162. The witnesses who knew the facts and testified to them, and who had qualified as expert parliamentarians, should have been permitted to express their opinions that the proceedings was regular and according to parliamentary usage.

Appellants complain of the presentation of the case by the court to the jury, because it failed to present their defenses to the jury, allowed them no opportunity to secure a verdict except upon the basis of non-participation in the publication, while it detailed and reiterated the grounds upon which appellee was entitled to recover. This is a just complaint against the charge. The only defense presented to the jury arose under the general issue of not guilty to the charge of publication. This course on the part of the trial judge was doubtless taken by reason of the judge's conception of the effects resulting from the failure of the defendants to plead the truth of the alleged libelous charges in justification. That character of plea is a plea in the nature of confession and avoidance under which the burden of the case practically rests on the defendants. The failure to confess the publication and excuse it by affirming the truth of the matter published does not cut the defendant off from any other legitimate defense. He must plead the truth of the libelous matter published, if he would avail himself of it as a perfect defense to the action; but his failure to do so does not destroy any other defense which may be urged to such an action. A legally sufficient plea of privileged communication, if properly supported by proof, is a perfect defense to an action for damages on account of libelous publication, and it should not have been ignored in this charge.

It is urged that the court erred in the charge, in overruling special exceptions, and in admitting evidence in relation to the elements of damage. It is claimed that injury to appellee's character as a minister of the gospel and editor of a Baptist paper; injury to his newspaper business, and injury by his exclusion from the convention, were all matters of special damage which were not sufficiently alleged, and should not have been considered. It was alleged that he was a Baptist minister and editor of a religious paper of the Baptist denomination, and the charges made against him necessarily, if believed, brought his character in these capacities into disrepute. Injury to his character as such minister and editor, therefore, would be implied from the charges, and would constitute such general damages as need not be specifically alleged or proven. 2 Sedg. on Dam., sec. 443; 3 Suth. on Dam., 643-645; 2 Greenl. on Ev., sec. 420.

His exclusion from the convention and injury to his newspaper business are subjects of special damage required to be specially alleged and proven. The petition specially alleged these as elements of damage, with sufficient particularity, and there was no error in allowing evidence in support thereof, and authorizing the jury to consider them in esti-

mating the damages sustained by appellee.    Suth. on Dam., 662; Newell on Defam., 838, sec. 1; Id., 849, sec. 16.

Appellant insists that the original written challenge and the original written minutes of the convention were the best evidence, respectively, of the contents of the challenge and of the proceedings of the convention in relation thereto, and that the court erred in allowing a printed copy of the minutes, and the publication in the Texas Baptist Standard to be read in evidence.    The objection was that the evidence offered was secondary in character, the loss of the original sources was not shown, and no legally sufficient reason presented for resorting to secondary evidence.    Before the trial of the case notice was served upon counsel for the defendants to produce the written challenge, or that secondary evidence of its contents would be used.    One of the defendants, Baten, was secretary of the convention, and as such the written challenge went into his hands.    It was not shown what final disposition was made of it.    It appears to have been published in obedience to a resolution of the convention.    The copy of the printed minutes and the publication in the Texas Baptist Standard were originals, as each of these publications were alleged to be libelous publications and damages were sought to be recovered therefor.    As to the contents of the written challenge published by being read to the convention, the writing itself is of course primary evidence of its contents.    The notice to produce it, served on the defendants' attorneys, and their failure to do so, should be held to authorize secondary evidence, if they are properly chargeable with its possession. It can hardly be said that any of the defendants, save Baten, could be charged with such possession, and it is contended that his possession was in the official character of secretary of the convention, and not as an individual, and that for this reason he should not personally be held bound by such notice to produce the paper.    It does not appear that such papers should go into the hands of any of the corporate officials, no corporate action was based on it, and it is not shown that they are required to be preserved by any one.    Each annual convention seems to be distinct and independent of the one which preceded it, and such papers, when they have been acted on by the convention and passed into the published proceedings, would appear to have no further useful purpose. Under such conditions the paper could not well be treated as a document held in official capacity for another.    And if this view be correct, the defendant Baten is the appropriate person to charge with the possession of the paper, as it properly went into his hands, and no reason is shown why it should pass to any other possession.    It may be questioned, however, whether this would settle the question as to the other defendants. Jones on Evidence treats a writing of this kind as being of such a transient nature that courts will recognize the uncertainty and difficulty of locating it and will relax the rule requiring the production of the original.    He states that a resolution read before a public meeting may be proved by parol, without accounting for the original, basing the propo-

sition upon two English cases cited, which are not available to us.   1 Jones on Ev., pp. 460, 461, sec. 204.

We have had some difficulty in recognizing the published minutes of the convention read in evidence, under the conditions stated, as coming within any of the recognized exceptions to the general rule requiring the production of the original written paper carried into such printed minutes.   We are inclined to think, however, that the rule should not be applied to papers to which there attaches no particularly appropriate or known possession.

We have found it utterly impracticable to treat each assignment of error in the opinion, by reason of the vast number presented; but have attempted to cover all the material issues involved on the appeal.

The judgment is reversed and cause remanded.

*Reversed and remanded.*