COBB v. GARLINGTON. (No. 8519.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 3, 1917.)

1. LIBEL AND SLANDER ☞34—"PRIVILEGED COMMUNICATION"—DEFINITION.

A "privileged communication" is one fairly made by a person in the discharge of some private or public duty, legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned (citing Words and Phrases, Privileged Communication).

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 113.]

2. LIBEL AND SLANDER ☞41—PRIVILEGED COMMUNICATIONS.

Communications not absolutely privileged may be conditionally or qualifiedly so and may be fair reports of the proceedings of courts and legislative bodies, or a communication in good faith in the performance of a duty, to another to whom defendant owes a duty, or a communication by one having an interest in the subject to one having a corresponding interest.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 127–129.]

3. LIBEL AND SLANDER ☞101(1)—PRIVILEGED COMMUNICATION — MALICE — BURDEN OF PROOF.

As a privileged communication is one made on an occasion and under circumstances that rebut the prima facie inference of malice arising from the publication of matter prejudicial to the character or reputation of the plaintiff, the plaintiff in a libel suit has the burden of proving malice in fact.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 273, 277, 278.]

4. LIBEL AND SLANDER ☞123(6)—PRIVILEGED COMMUNICATION—QUESTION FOR JURY.

In a libel case based on an alleged privileged communication, although plaintiff has the burden of proof of malice, he has the right to submit the alleged libel itself to the jury as evidence of malice on its face, and on the question whether the author or publisher has exceeded his privilege, or had used the occasion to indulge his malice, and not in good faith to perform a duty or make a communication useful and beneficial to others.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 363.]

5. LIBEL AND SLANDER ☞5, 51(1) — PRIVILEGED COMMUNICATIONS—"MALICE."

"Malice," as used in connection with privileged communications, does not necessarily import hatred, ill will, anger, wrath, or vindictiveness, but need be no more than the antithesis of good faith, and if defamatory words charge

an actionable crime, and there be an entire absence of malice in fact, actual damages may nevertheless be recovered.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 149, 278.

For other definitions, see Words and Phrases, First and Second Series, Malice.]

6. LIBEL AND SLANDER ☞5 — PRIVILEGED COMMUNICATIONS—EVIDENCE—MALICE INFERENCES.

Malice may be inferred from the reckless publication of libelous matter.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 278.]

7. LIBEL AND SLANDER ☞34—PRIVILEGED COMMUNICATIONS.

The mere fact that a communication of libelous matter is made confidential does not make it a privileged communication.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 113.]

8. LIBEL AND SLANDER ☞101(4)—PRIVILEGED COMMUNICATIONS — EVIDENCE — BURDEN OF PROOF.

In a libel case the burden is on the defendant to establish the privileged character of the communication.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 150, 279.]

9. LIBEL AND SLANDER ☞34, 51(1) — PRIVILEGED COMMUNICATIONS—MALICE.

To be privileged, the communication must be made upon a proper occasion, upon a proper motive, and must be based upon reasonable grounds, and, when so made, in good faith, no recovery can be had without proof of express malice.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 113, 149.]

10. LIBEL AND SLANDER ☞113—LIBEL PER SE—ACTUAL DAMAGES—"LIBEL."

Vernon's Sayles' Ann. Civ. St. art. 5595, defines "libel" as a defamation expressed in printing or writing tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt, or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one. Article 5596 provides that, if specially pleaded, the defendant may give in evidence, in mitigation of exemplary or punitive damages, circumstances and intentions under which the libelous publication was made, and any public apology, correction, or retraction made and published by him of the libel complained of, but does not provide that such circumstances and intentions may be successfully offered as a complete defense against the action. Article 5597 enumerates certain publications and communications which shall be deemed privileged. Defendant in a letter to a bank stated that plaintiff and another had procured a draft drawn on defendant and held by the bank by taking advantage of defendant's son, who was insane, and that, unless the draft was canceled, the defendant expected to prosecute. Defendant after suit was brought wrote a letter to plaintiff retracting the libelous statements. Held that, while the statute does not exclude the beneficent operation of the principles of the common law with reference to conditionally or qualifiedly privileged communications, the publication of a statement charging one with the commission of a criminal offense involving moral turpitude, unless absolutely privileged, is actionable per se, and in such cases plaintiff need not prove special damages, and his mental suffering may be considered in estimating general and compensatory damages, so that, the statements charging plaintiff not being

true, he was entitled to recover actual damages alleged and proven.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 342.

For other definitions, see Words and Phrases, First and Second Series, Libel.]

11. LIBEL AND SLANDER ☞25, 113—PUBLICATION.

Where defendant wrote a letter to a bank containing libelous statements concerning plaintiff, the fact that the bank, and not the defendant, published the letter, is immaterial, and, defendant being primarily responsible for the publication of the letter, he is liable for the natural and probable consequences resulting therefrom, though he did not have in mind at the time the actual results following.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 107, 108, 342.]

12. LIBEL AND SLANDER ☞120(1) — EXEMPLARY DAMAGES.

Where the libelous statements made by defendant concerning plaintiff in a letter to a bank were, although unwarranted and untrue, the natural result of an investigation made in good faith and in the exercise of due care, as punitory damages are awarded as a punishment, the imposition of exemplary damages was erroneous.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 350.]

Buck, J., dissenting in part.

Appeal from District Court, Montague County; C. F. Spencer, Judge.

Suit by John Garlington against H. H. Cobb. Judgment for plaintiff, and defendant appeals. Reformed and affirmed.

John J. Hiner, of Ft. Worth, for appellant. J. W. Chancellor, of Bowie, for appellee.

BUCK, J. This suit was brought February 8, 1915, by appellee against appellant to recover both actual and exemplary damages, and was based upon the writing by appellant to the City National Bank of Bowie, Tex., of the following letter:

"H. H. Cobb, Pres., E. A. Slack, V. Pres., A. B. Richardson, V. Pres., D. E. Cobb, V. Pres., C. S. Cobb, Treas., W. H. Cobb, Secy., H. B. Church, Asst. Secy. The W. C. Belcher Land Mortgage Co. Ft. Worth, Texas, Jan. 29, 1915. City National Bank, Bowie, Texas—Gentlemen: Yours of the 28th at hand. The draft referred to was obtained by fraud. D. E. Cobb was (at the time of this draft) just recovering from a very serious attack of insanity, and was not fit to do business. Jackson & Garlington knew of this and took advantage of his extremely nervous condition. Jackson & Garlington have not accounted to me for rent of my 586 acres on which Jackson lived last year. Unless they cancel and return this draft I expect to prosecute them. Yours truly, H. H. Cobb."

The above letter was in answer to the hereinafter set out letter written by the bank, to wit:

"Bowie, Texas, Jan. 28th, 15. The W. C. Belcher Land Mortgage Co., Ft. Worth, Texas—Gentlemen: Several days ago Mr. John Garlington deposited with us a draft on you for $55.00 drawn by D. E. Cobb, V. Pt., and payable to John Garlington and Sam Jackson. Payment on this draft was refused and was protested and returned. The protest fees were $5.10. You will please advise us why pay-

ment on this draft was refused, as Mr. Garlington says that he has a letter from Mr. Cobb, who signs as V. Pt., to turn this in to the Bank and get the funds on it. Yours very truly, C. C. Hutchinson, Asst. Cashier."

It appears from the statement of facts that H. H. Cobb, who was president of the W. C. Belcher Land Mortgage Company, had an adopted son, D. E. Cobb, who had become demented, and had been sent by H. H. Cobb to the latter's ranch in Jack county for the purpose of restoring his health and normal mental condition. One Sam Jackson was a tenant on, and in charge of, appellant's ranch, and during December, 1914, sold to D. E. Cobb for $55 certain cotton in the field and unpicked. In payment of said cotton the following draft was drawn:

"Jermyn, Texas, ~~Traverse City, Mich.,~~ December 26, 1914.

First
National
Bank
Traverse
City

John Garlington
& Sam Jackson
~~First National Bank of Traverse City~~

Pay to the order of

Fifty-five & 00/100 dollars.                    $55.00

Value received and charge same to account of

To W. C. Belcher Land Mortgage Co.,
    Ft. Worth,
        Texas.

                        D. E. Cobb, V. Pt."

It appears that Jackson owed Garlington, and in part payment of such indebtedness delivered to Garlington, who was a merchant doing business at Bowie, said draft. Garlington deposited the draft in the City National Bank at Bowie, and it was sent to Ft. Worth, where appellant lived, for collection. When the draft was presented to appellant it did not have the indorsement of John Garlington upon it, and the draft was returned to the City National Bank of Bowie for such indorsement. After the indorsement was made, it was again returned for payment, and the payment thereof refused, and the item protested. As presented in evidence, the draft had across the face a notation of protest on January 20, 1915, and on the back of same the indorsements "Sam Jackson" and "John E. Garlington."

The case was tried before the court, and judgment rendered for plaintiff for $100 actual damages and $100 exemplary damages, from which judgment defendant appeals.

Appellee claimed that his credit was injured at said bank, and generally, on account of said letter written by appellant, and also claimed damages for injuries to his feelings, as well as exemplary damages on account of the facts: That the statements in said letter were untrue, and were willfully and maliciously made by appellant for the express purpose of injuring appellee.

Appellant pleaded that the letter written by him was in answer to the letter written to him by said bank calling for certain information; that the same was written in confidence to said bank, in' good faith, with the honest belief that the statements therein contained were true, and without any malice on his part towards appellee, and without any intention on his part to injure him. He further pleaded that said letter was written by him under the belief that he owed the duty to said bank to furnish it the information called for in its letter to him, and that he thought and believed that said letter was a confidential communication to said bank and was written by him as such; that, if appellee was not the party who had perpetrated the fraud on his son in connection with Sam Jackson, then the letter written by him to said bank had no reference to him; that if said letter was shown to appellee, or to any one else, by said bank, it was so shown without appellant's knowledge or consent; and that, if any injury occurred to appellee by reason of the circulation of said letter by said bank, then such injuries, if any, were occasioned by the act of the bank, and not by the act of appellant.

Appellant testified that his adopted son, D. E. Cobb, had not been in good mental condition for some years; that he had been confined in asylums at Traverse City, Mich., at Paris Sound, Ontario, and at Flynt, Mich.; that this unsettled condition of mind had existed for some. ten years, but not so seriously until about three years prior to the trial; that during the past four years the appellant and the Belcher Land Mortgage Company had not intrusted any business matters to said D. E. Cobb, though his name appeared still on some of the letter heads and other stationery of the company as vice president of said company; that on receipt of the draft he noted the absence of Garlington's indorsement and had the draft returned to the bank to procure the same. In the interim appellant took a trip to his ranch and learned what he thought were the facts in the case, to wit, that Sam Jackson and another, whom he understood to be Garlington, had induced appellant's demented son to give them the draft in question in payment of a little remnant of cotton then in the field, which was subsequently sold for $9; that Jackson had tried to sell appellant the crop before it was picked, and that he had refused to buy it;

that he concluded that Jackson and the other man, whom he thought and understood to be Garlington, had attempted to take advantage of the known mentally weak condition of his son; that he did not know Garlington personally, and had no ill feeling or malice towards him, and that at the time he made the statements contained in the letter he believed them to be strictly true, with reference to the parties who had sold this cotton to his son; that upon his learning that Garlington was not the other man present when the cotton was sold to his son, he wrote the following letter to Garlington:

"The W. C. Belcher Land Mortgage Co., Ft. Worth, Texas, Feb. 12, 1915. John Garlington, Bowie, Texas—Dear Sir: I am just back from a trip to Jack county. I learned that you had no interest in the crop made by Mr. Sam Jackson except probably a mortgage interest. I had been misinformed and supposed you and Jackson were partners. In writing the bank at Bowie I should not have connected your name with Mr. Jackson's as I did. The check which my son gave being drawn to you and Jackson, I supposed at that time that you and he were partners. As my son was known to be an invalid, just recovering from a most serious spell of insanity, I was naturally very indignant that neighbors should take such an advantage of his condition. Am very sorry to have been unjust to you. If you show this letter to your bankers it will I hope set matters as nearly right as possible. Yours truly, H. H. Cobb."

As will be noted, the letter is dated February 12, 1915, four days after suit was filed, though appellant stated that he did not know whether the letter to Garlington was written after or before the service of citation in the case. He further stated under cross-examination:

"I do not commonly write such letters with reference to men as I wrote to the bank on this occasion; I might act a little more hasty right at the time than I would at a later date. Yes; I was a little bit vexed right at that time."

Appellee testified that he did not know D. E. Cobb nor H. H. Cobb; that he had a mortgage on the crop of Sam Jackson, and that the draft was sent him in part payment of the indebtedness due him; that he knew nothing of any trade between D. E. Cobb and Sam Jackson in settlement of which the draft was given; that he knew nothing of the mental condition of D. E. Cobb; and that, when the payment on the draft was refused, he wrote to D. E. Cobb for an explanation. There appears in the statement of facts the following letter, which evidently accompanied, or was written about the time of the sending of, the draft to Garlington:

"Jany. 13, 1915.
"Mr. John Garlington, Bowie, Texas—Dear Sir: I inclose draft in favor of you and Sam Jackson for $55 for cotton. Please indorse same and deposit in your bank.
"Yours truly,    D. E. Cobb."

Appellee further testified that he did not claim any injury in this case, as a basis for damages, except the injury to his feelings; that it hurt his feelings considerably.

Appellant urges in his first assignment that the undisputed testimony in this cause shows that the letter made the basis of this suit was written by him to the bank in reply to a letter to him seeking certain information, and that said letter was and is a privileged communication, and was so considered by the defendant, and was written by him under the belief that he owed it to said bank to state the facts to it as he understood them, and that he acted in good faith, with the honest belief of the truthfulness of the statements so made, and that said letter was written without any malice on his part, or without any intention to injure the plaintiff herein.

Preliminary to the discussion of this assignment, it may be well for us to state some recognized definitions of the terms used in this assignment, and as may be necessarily used in the further discussion of the questions therein presented, and to state some general principles of law connected with the subject of libel.

[1] A "privileged communication" is one fairly made by a person in the discharge of some private or public duty, legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned. Ashcroft v. Hammond, 197 N. Y. 488, 90 N. E. 1117, 1119, cited in 3 Words and Phrases, p. 1210. In the case of Allen v. Earnest, 145 S. W. 1101–1104, the Court of Appeals for the Fifth District quotes with approval the following definition given in Knapp & Co. v. Campbell, 14 Tex. Civ. App. 199, 36 S. W. 766:

"Privileged communications are usually divided into those absolutely privileged and those only conditionally so. By an absolutely privileged publication is meant one which, by reason of the occasion upon which it is made, no remedy is provided for the damages in a civil action for slander or libel. Such are the opinions of judges of superior courts and the speeches of members of Congress or Legislatures."

Towns. Sland. & Lib. § 176, defines the term as:

The privilege to "publish, by speech or writing, whatever he honestly believes is essential to the protection of his own rights, or to the rights of another, provided the publication be not unnecessarily made to others than to those persons whom the publisher honestly believes can assist him in the protection of his own rights, or to those whom he honestly believes will, by reason of a knowledge of the matter published, be better enabled to assert, or to protect from invasion, either their own rights or the rights of others intrusted to their guardianship."

[2] Communications not absolutely privileged may be conditionally or qualifiedly so, and may be divided into three classes, namely: (1) Fair reports of the proceedings of courts and legislative bodies; (2) where the defendant in good faith, in the performance of a duty, makes a communication to another to whom he owes a duty; (3) where one who has an interest in the subject makes a communication relating thereto to another having a corresponding interest. 3 Words and Phrases, p. 1212. See, also, Hix v. State (Cr. App.) 20 S. W. 550, 551. Our statute (article 5595, Vernon's Sayles' Texas

Civil Statutes) defines libel, in so far as it many be pertinent here, as:

"A defamation expressed in printing or writing, * * * tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one."

Article 5596, Vernon's Sayles' Texas Civil Statutes, provides that, if specially pleaded, the defendant may give in evidence, in mitigation of exemplary or punitive damages, circumstances and intentions under which the libelous publication was made, and any public apology, correction, or retraction made and published by him of the libel complained of; yet it does not provide that such circumstances and intentions may be successfully offered as a complete defense against the action, apparently limiting such complete defense or justification to the establishment of the truth of the statements made in such publication. Article 5597, Id., enumerates certain publications and communications which shall be deemed privileged. Yet under our decisions construing articles 5596 and 5597, supra, it seems to have been generally recognized by our courts that said articles do not exclude the beneficent operation of the principles of the common law with reference to conditionally or qualifiedly privileged communications. But a communication may be made upon an occasion which would authorize a privileged communication, and yet the author or writer may use language in excess of the limits fixed by such privilege.

[3, 4] A privileged communication is one made on an occasion and under circumstances that rebut the prima facie inference of malice arising from the publication of matter prejudicial to the character or reputation of the plaintiff, and throws upon him the burden of proving malice in fact, but not of proving it by extrinsic evidence only. He has still a right to require that the alleged libel itself shall be submitted to the jury, or to the court where jury is waived, that they may judge whether there is evidence of malice on the face of it. Morse v. Times-Republican Printing Co., 124 Iowa, 707, 100 N. W. 867. Also the jury or court trying the case would have the right to pass upon the question of whether or not the author or publisher of the alleged libel had in fact exceeded his privilege in the communication made, or had used the occasion to indulge his malice, and not in good faith to perform a duty or make a communication useful and beneficial to others. See M. P. Ry. Co. v. Richmond, 73 Tex. 568, 575, 11 S. W. 555, 4 L. R. A. 280, 15 Am. St. Rep. 794.

[5] In this connection it will be well for us to keep in mind that the term "malice," as here used, does not import necessarily hatred, ill will, anger, wrath, or vindictiveness, but need be no more than the antithesis of good faith. If defamatory words charge an actionable crime, and there be an entire absence of malice in fact, actual damages may nevertheless be recovered. Belo & Co. v. Joe Fuller, 84 Tex. 450, 453, 19 S. W. 616, 31 Am. St. Rep. 75; Forke v. Homann, 14 Tex. Civ. App. 670, 39 S. W. 210, writ of error denied in 93 Tex. 683, 39 S. W. 210.

[6-8] Malice may be inferred from the reckless publication of libelous matter. The mere fact that a communication of libelous matter is made confidential does not make it a privileged communication. Smith v. State, 32 Tex. 594. And the burden is on the defendant to establish the privileged character of the communication. Holt v. Parsons, 23 Tex. 9, 76 Am. Dec. 49.

[9] To be privileged, the communication must be made upon a proper occasion, upon a proper motive, and must be based upon reasonable grounds. When so made, in good faith, no recovery can be had without proof of express malice. Newell on Libel, 391, § 7; Cranfill v. Hayden, 22 Tex. Civ. App. 656, 55 S. W. 805.

"The occasion is the entire group of circumstances surrounding the act, including the actor, the person acted upon, the character of the act, the manner of effecting the act, and the motive and consequences of the act." Same authorities.

[10] From the above discussion of established principles pertaining to the subject of libel it is apparent to us that the appellant, upon the receipt of the letter of inquiry from the bank, had the right to communicate to the bank the reason or reasons for his refusal or failure to honor the draft; such reasons to be given succinctly and with due regard to the rights of the third parties concerned, including the appellee. But we are further of the opinion that the trial court was justified in deciding, as he evidently did, that the letter upon which this action was based contained statements beyond, and not within, the scope of the privilege accorded to appellant by reason of the occasion. The bank had an interest in the subject-matter involved; that is, had a right to know why the payment of the draft had been refused. But we do not think the situation and occasion could be held to justify, or to even call for, certain statements contained in the letter to the effect that Garlington had been guilty of an offense against the law, for which appellant intended to prosecute him, unless the draft should be returned and canceled. The publication of a statement charging one with the commission of a criminal offense involving moral turpitude, unless absolutely privileged, is actionable per se. Sanders v. Hall, 22 Tex. Civ. App. 282, 55 S. W. 594, writ of error denied. And since it is acknowledged by appellant, and amply shown by the evidence, that the statements contained in this letter with reference to appellee were not true or justified, but were made under a misunderstanding as to the facts, it follows that the plaintiff was entitled to recov-

er for such actual damages as he had alleged and proven. 25 Cyc. 260g. Where an article admitted to have been published is libelous per se, plaintiff need not prove special damages, but is entitled to such damages as the jury believe from the nature of the false charge he has sustained by reason of mental anguish and injury to his reputation. Belo & Co. v. Smith, 40 S. W. 856. Where the words published are in themselves libelous per se, mental suffering occasioned thereby may be taken into consideration by the jury or court for the purpose of estimating general and compensatory damages. 25 Cyc. 533 (IV); Forke v. Homann, 14 Tex. Civ. App. 670, 39 S. W. 210; Belo & Co. v. Fuller, 84 Tex. 453, 19 S. W. 616, 31 Am. St. Rep. 75; Zeliff v. Jennings, 61 Tex. 458–466; Houston Printing Co. v. Moulden, 15 Tex. Civ. App. 574, 41 S. W. 381, 385; Williams v. Yoe, 19 Tex. Civ. App. 281, 46 S. W. 659. Hence we conclude that appellant's first, second, third, fourth, and fifth assignments must be overruled in so far as the questions therein presented pertain to that part of the judgment allowing actual damages.

[11] We do not believe that the contention of appellant that any injury to the appellee was caused, not by his act in publishing the letter, but by the act of the bank in showing the letter to the appellee, is sound. It must have been reasonably presumed and understood by appellant when he wrote the letter to the bank that the bank would show the letter to appellee, by whom the draft had been placed in the bank for collection, and that, if the statements were untrue or unwarranted, appellee's feelings would be hurt thereby. The appellant being primarily responsible for the publication of the letter, he is liable for the natural and probable consequences resulting therefrom, though he did not have in mind at the time the actual results following. 25 Cyc. 366 et seq.

[12] The sixth specification of error is leveled at that part of the judgment of the trial court which awards exemplary damages in favor of plaintiff as being "wholly unsupported by the evidence herein and the law applicable to the facts of this case."

As to the proper determination of the question here presented, we are not entirely agreed, but the majority, consisting of Chief Justice CONNER and Associate Justice DUNKLIN, are of the opinion that the assignment should be sustained, and upon the following grounds: Exemplary damages can be awarded only as a punishment when the injury inflicted was the result of the fraud, malice, gross negligence, or oppression of the defendant. When such damages are claimed, the petition should set forth the acts or omissions which constituted such fraud, mal-

ice, gross negligence, or oppression. Railway Co. v. Garcia, 70 Tex. 207, 7 S. W. 802. To authorize a verdict for exemplary damages in a case of this kind, there must be evidence to satisfy the mind that the person responsible for the publication of the alleged libel was actuated by malice, either express or implied, and with the present consciousness of invading another's right or of exposing him to injuries. Jacobs, Bernheim & Co. v. Crum, 62 Tex. 415; Harmon v. Callahan, 35 S. W. 705; Smith v. Holland, 16 S. W. 424. The majority are of the opinion that the facts in this case show that the appellant, before writing the letter, had made such an investigation of the facts as a reasonably prudent man would have made under the circumstances, and that as a result of such investigation he reached the conclusion that the appellee had been guilty of a gross act of bad faith in securing the draft in question from the appellant's adopted son, and that this conclusion, though it afterwards proved to be unwarranted, was a natural result of the investigation made in good faith, and in the exercise of due care by appellant; that since punitory damages are awarded as a punishment, and not in the way of compensation, and since the facts fail to show the lack of due care on the part of appellant in investigating the matter before he wrote the letter, or in coming to the conclusion that such letter expressed, the exemplary damages herein awarded were not justified. Hence the majority conclude that the judgment herein should be reformed by eliminating the exemplary damages awarded, and affirmed as to the actual damages recovered, and costs of suit in the trial court, with costs of this appeal taxed against appellee.

The writer does not concur in this disposition of the case, nor agree that the facts exclude the idea of a lack of investigation on the part of appellant such as a reasonably prudent man would have made under the circumstances, or that the letter itself and the testimony of appellant and others exclude the idea of implied malice. If the facts show that the defendant in an action for libel was actuated either by express or implied malice, exemplary damages will lie. King v. Sassaman, 54 S. W. 304; Cotulla v. Kerr, 74 Tex. 89, 11 S. W. 1058, 15 Am. St. Rep. 819; Cranfill v. Hayden, 97 Tex. 544, 80 S. W. 609; Bradstreet v. Gill, 72 Tex. 115, 9 S. W. 753, 2 L. R. A. 405, 13 Am. St. Rep. 768.

But, in accord with the conclusion of the majority, the judgment here will be reformed so as to exclude the item of exemplary damages, and, as so reformed, will be affirmed; the costs of this court taxed against appellee.

Reformed and affirmed.

BUCK, J., dissenting in part.