## GORDON v. BUTLER.

A., wishing to borrow money of B., offered by way of security a mortgage upon his real estate containing sandstone quarries, which had not been sufficiently worked to show their extent and value. He furnished, however, the certificate of two other persons, setting forth, each for himself, that he had for more than twenty years resided in the neighborhood of the quarries, and was acquainted with them, and giving, in his best judgment, their value, which was one hundred and fifty per cent more than the amount of the loan. B. took the mortgage and lent the money, which was not paid. Upon a sale under a decree of foreclosure, the land brought less than one-sixth of the amount loaned. B. thereupon sued A. and the other parties to recover damages for the loss sustained, and he charged that they had conspired to defraud him by a false and fraudulent certificate. *Held*, that the action will not lie, the defendants not being liable for an expression of opinion, however fallacious, in regard to property the value of which depends upon contingencies that may never occur, or developments that may never be made.

ERROR to the Circuit Court of the United States for the Northern District of New York.

The facts are stated in the opinion of the court.

*Mr. Leslie W. Russell* for the plaintiffs in error.

*Mr. Harry Bingham* and *Mr. A. X. Parker* for the defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court.

This was an action for alleged fraud upon Butler, the plaintiff below, in obtaining from him a loan of $10,000 upon insufficient security. The facts of the case, so far as necessary to present the questions involved for our consideration, are briefly as follows: —

Near the town of Potsdam, in New York, there are sandstone quarries, situated on the west bank of Racket River. The land containing them, when the loan was made, was divided into lots, varying in size from seven to thirty-six acres. Previously to 1873 the quarries, although generally supposed to consist of stone valuable for building and other purposes, had not been opened sufficiently to show their extent and value. A quarry similar in external appearance, situated on the river below and adjoining them, called the Parmeter quarry, had been worked for thirty or forty years, and fur-

nished stone of a valuable quality in large quantities. For some years prior to 1872 the defendant, Gordon, a resident of Potsdam, had been assiduously trying to get possession of the quarries, in the belief that on development they would prove valuable, like the Parmeter quarry. His letters to Butler, the plaintiff, written at the time, indicated a confident belief that a fortune was to be made out of them; and he invested in them whatever means he could raise.

The plaintiff, prior to 1872, had frequently visited Potsdam, where he became acquainted with Gordon, a lawyer in practice there, and often employed him professionally. During these visits he learned something of the quarries, and that Gordon desired to obtain possession of and develop them. In that year there was much correspondence between them on the subject. Gordon expressed a strong conviction that the stone would be very valuable, and find a ready market, and stated what he had heard of the buildings on which it had been used, and of those for which it would probably be wanted. He desired to organize a stock company to work the quarries, and to have the plaintiff join in the enterprise. Failing to secure his co-operation, and being advised by him that he had better work the quarries himself, Gordon applied for a loan for that purpose. After much correspondence and negotiation, the plaintiff promised to loan him $10,000, to be secured by mortgage on some of the lots, and advised him against investing a larger sum in them. The plaintiff, as is manifest from the correspondence, was fully aware at the time of the slightly developed condition of the property; but an estimate of its probable value was furnished by the following certificate obtained by Gordon from the defendants Watkins and Foster, well-known gentlemen of the place, and sent to him:—

"Each of the undersigned hereby certifies that he is and has been for more than twenty years last past a resident of Potsdam, St. Lawrence Co., New York, and acquainted with the sandstore quarries south of Potsdam village; that he is acquainted with the quarry lots there owned by S. B. Gordon, and situate on the westerly shore of Racket River; that said lots are roughly represented on the annexed diagram; have on them the buildings, and in his

best judgment contain the quantity of land, and are worth the sums severally below cited, to wit:

| | | | | | |
|---|---|---|---|---|---|
| "No. 1 — Falls Lot . . . . . . . | about | 8 | acres, | worth | $8,000 |
| " 2 — Orchard Lot . . . . . | " | .4 | " | " | 5,000 |
| " 3 — Cox " . . . . . | " | 16 | " | " | 8,000 |
| " 4 — Hicks " . . . . . | " | 15 | " | " | 5,000 |
| " 5 — Meacham " house and barn . . . . . . . | " | 7 | " | " | 5,000 |
| " 6 — Hale Lot . . . . . . . | " | 10 | " | " | 1,000 |
| " 7 — Parmeter Lot 2 houses and barns . . . . . | " | 17 | " | " | 8,000 |
| " 8 — Train Lot . . . . . . | " | 26 | " | " | 8,000 |
| Total, 8 lots. | | 103 | | | $48,000 |

"Dated Potsdam, Dec. 12, 1872.

"H. Watkins.
"E. W. Foster."

No oral representations on the subject were made to the plaintiff by Watkins or Foster. Their connection with the loan consisted merely in furnishing this certificate at the request of Gordon. The loan was made on the first of the following January, and a mortgage taken as security for it upon four of the lots mentioned in the certificate, the aggregate value of which, as there stated, being $26,000. Watkins and Foster were at the time interested in the proposed enterprise; and their estimate of value was placed upon the lots, not as agricultural lands, but as lands containing sandstone quarries not yet opened.

After receiving the loan Gordon proceeded to open the quarries, and his operations had not progressed far when the financial crisis of 1873 came, and in it his enterprise was engulphed. The work on the quarries was stopped, and the value of the property rapidly depreciated. The mortgage to the plaintiff contained a clause declaring that the whole amount of the loan should at once become due if the interest was not punctually paid. Taking advantage of this clause, he commenced proceedings to foreclose the mortgage, and pressed them to a decree under which the premises were sold and bid in by him for the sum of $1,500. He then commenced the present action against

Gordon, who had obtained the loan, and Watkins and Foster, who had given the certificate as to the value of the property, to recover damages for the loss sustained by him. In his complaint he alleges that these parties conspired to defraud him by obtaining the loan upon a false and fraudulent certificate as to the value of the property.

The defendants pleaded the general issue. On the trial the plaintiff produced the correspondence between him and Gordon, which resulted in the loan. He also offered the testimony of geologists, experts, and laborers as to the probable character and value of the material in the quarries. The whole, including the correspondence, covers many pages of the record, but its substance and purport, so far as it is at all material, we have stated. When it was closed, the defendants requested the court to direct the jury to find for them on several grounds, and, among others, that, upon the whole proof, no cause of action had been established against them. The court refused to give this direction, and an exception was taken. Testimony was then produced by the defendants; and, after instructions from the court, the case was submitted to the jury, who found for the plaintiff.

We do not deem it important to comment upon this testimony, or to notice the rulings of the court upon matters which were objected to, nor upon its instructions to the jury. It is enough to observe that if the testimony did not weaken, it did not strengthen, the case against the defendants. The question then is whether, upon the proof furnished by the plaintiff, a cause of action was established against the defendants; for, if not, the motion to direct the jury to find in their favor should have been granted. Upon this question we have no doubt. The essence of the charge against them is a conspiracy to defraud the plaintiff, carried into execution by a false and fraudulent certificate of valuation of the property given as security for the loan. The certificate of Watkins and Foster is that, *in the best judgment* of each, the lots were worth the sums severally stated. To justify any imputation of fraud in giving the certificate, it was necessary to show that the parties signing it had knowledge, at the time, that the value of the property was materially less than their estimate. And from the nature of

the property, and its imperfectly developed condition, such knowledge was impossible.   No one could know its actual value until further development was made.   Until then, any estimate must have been entirely speculative and conjectural.   It would depend as much, perhaps, upon the temperament and expectations of the party making it, as upon any knowledge of facts.   The law does not hold one responsible for the extravagant notions he may entertain of the value of property, dependent upon its future successful exploitation, or the result of future enterprises; nor for expressing them to one acquainted with its general character and condition.   How could an overestimate in such a case be shown?   Other estimates would be equally conjectural.   The law does not fasten responsibility upon one for expressions of opinion as to matters in their nature contingent and uncertain.   Such opinions will probably be as variant as the individuals who give them utterance.   A statement of an opinion assigning a certain value to property like a mine or a quarry not yet opened is not to be pronounced fraudulent because the property upon subsequent development may prove to be worthless; nor is it to be pronounced honest because the property may turn out of much higher value.

The case of *Holbrook* v. *Connor*, which arose in the Supreme Court of Maine, illustrates this doctrine.   There the vendor and his agent represented, among other things, that lands sold by them contained large deposits of oil, and were of great value for the purpose of digging, boring for, and manufacturing it; and upon the representations the purchasers acted.   The evidence tended to show that the representations were false and fraudulent, and the plaintiff obtained a verdict; but the Supreme Court set it aside.   It appeared that the land had not been tested; and it was unknown to both parties whether it was valuable as oil land, except so far as might be inferred from the production of wells on neighboring lands, and a single well upon the land in question.   The court held that under these circumstances the representation was to be regarded as a matter of opinion, and would not support the action.   60 Me. 578.

Whenever property of any kind depends for its value upon contingencies which may never occur, or developments which

may never be made, opinion as to its value must necessarily be more or less of a speculative character; and no action will lie for its expression, however fallacious it may prove, or whatever the injury a reliance upon it may produce. The determination of its truth or falsity, until the contingency occurs or becomes impossible, would lead the court into investigations for which they have no fixed rules to guide their own judgments or to instruct juries.

For opinions upon matters capable of accurate estimation by application of mathematical rules or scientific principles, such, for example, as the capacity of boilers, or the strength of materials, the case may be different. So, also, for opinions of parties possessing special learning or knowledge upon the subjects in respect to which their opinions are given, as of a mechanic upon the working of a machine he has seen in use, or of a lawyer upon the title of property which he has examined. Opinions upon such matters are capable of approximating to the truth, and for a false statement of them, where deception is designed, and injury has followed from reliance on them, an action may lie. But to this class the present case does not belong. It falls within the class first mentioned.

It follows from these views, that the court below should have directed the jury, upon the close of the plaintiff's testimony, to find a verdict for the defendants; for, from the nature of the subject, in relation to which the certificate was given, the estimate of value was nothing more than a conjectural opinion, which, whether true or false, constituted no legal cause of complaint.

The judgment of the court below must, therefore, be reversed, and the cause remanded for a new trial; and it is

*So ordered.*