### J. B. DONOHO v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

Decided November 11, 1899

**Life Insurance Policy—False Representations by Agent.**

An insurance company issued to plaintiff a ten-years policy on his life, known as the "free tontine policy," guaranteeing to pay at its expiration a fixed amount as "reserve," and an amount as "accumulated surplus" estimate at $1765, this estimate being based on the past experience of the company with such policies, the exact amount of such surplus not being guaranteed, but to be dependent on the company's future experience with such policies, then a new kind, and upon variable conditions as to the rate of mortality, etc. The amount of surplus paid plaintiff being only $960, he sued the company for the difference between this sum and the estimated amount of $1765, on the ground that the company's agent had falsely represented that matter. The evidence showed merely that the agent had, over his own signature, furnished plaintiff with the printed statements and estimates of the company, as above indicated, and it was not controverted that $960 was the true amount of the accumulated surplus. Held, that the statements as to the amount of the surplus were matters of estimate and opinion only, and that as the evidence was not sufficient to raise an issue of intentional fraud or deceit, a verdict was properly instructed for the defendant.

APPEAL from Red River.   Tried below before Hon. E. D. McCLEL-LAND.

*A. L. Beaty,* for appellant.

*Ogden & Terrell,* for appellee.

FINLEY, CHIEF JUSTICE.—This is a suit for damages instituted by Donoho against the insurance company named above.   He alleges that on November 14, 1886, he was induced by an agent of the company to take out a policy of life insurance in said company for the sum of $10,-000, the policy being what is termed a "free tontine policy," maturing in ten years, and the annual premium being $773.   The policy provided, among other things, that upon the expiration of the ten years period, should the insured be living and the policy in force, he would be entitled to certain valuable options, among them this one:   "To withdraw in cash such policy's entire share of the assets, i. e., the accumulated reserve, which shall be $5774.80, and in addition thereto the surplus apportioned by said society to such policy."

It is alleged that the said agent represented that the surplus which would be apportioned to this policy at the end of the ten years would be $1765.20, which statement and representation by said agent was by him claimed to be based on the actual results of tontine savings fund policies which had then matured, and represented that unless the future experience of the society should fall short of that of the past, he would be entitled to the amount stated as surplus.   It is charged that these statements were relied upon as true, and that they induced the taking out of the policy.   They are charged in fact to have been false, and that they were fraudulently made to induce him to take out the policy.   It was alleged that the surplus at the end of the ten years only amounted to the sum of $960.70, the total he received upon final settlement being $6735.50.   The difference between the actual surplus which was accumulated and paid and that which the agent represented would accumulate and be paid, to wit, $804.50, is sued for as the damages alleged to have been caused by the said false and fraudulent statements and deceit practiced on him.

The defendant answered by general and specific denials, and plea of settlement, accord, and satisfaction.

On the trial the plaintiff introduced his evidence, the defendant offered no evidence, and the court instructed a verdict for defendant.   Under this peremptory instruction a verdict for defendant was rendered, and judgment was entered in accordance with the verdict.   Plaintiff has appealed to this court and seeks a reversal of the judgment.

The evidence adduced showed this state of facts:

A "free tontine policy" of insurance upon the life of appellant, maturing at the expiration of ten years, at premium of $773 a year, was

issued by appellee, November 14, 1886, and the premiums were regularly and fully paid by appellant for the entire tontine period. The policy contained these stipulations: "(1) That this policy is issued under the free tontine plan, the particulars of which are as follows: (2) That the tontine dividend period for this policy shall be completed on the fourteenth day of November in the year 1896. (3) That no dividend shall be allowed or paid upon this policy unless the person whose life is hereby assured shall survive the completion of its tontine dividend period as aforesaid, and unless this policy shall be then in force. (4) That all surplus or profits derived from such policy on the free tontine plan, as shall not be in force at the date of the completion of their respective tontine dividend periods, shall be apportioned equitably among such policies as shall complete their tontine dividend periods. (5) That upon the completion of the tontine dividend period on November 14, 1896, provided this policy shall not have been terminated previously by lapse or death, the said James B. Donoho shall have the privilege of the following options: Either, first, to withdraw in cash this policy's entire share of the assets, i. e., the accumulated reserve, which shall be $5774.80, and in addition thereto the surplus apportioned by said society to this policy; second, to surrender the policy for a life annuity; third, to withdraw in cash the share of the accumulated surplus apportioned by said society to this policy, and continue the policy in force as a paid up policy; fourth, to continue the assurance for the original amount and apply the entire tontine dividend to the purchase of an annuity, the amount of which annuity, together with the annual dividend, if any, on this policy shall be paid in cash to said James B. Donoho or assigns; or fifth, to surrender the policy for its entire value in paid up assurance on which no further payments of premiums will be required. As, however, the amount of this paid up assurance will exceed the amount of the original policy, a satisfactory certificate of good health will be required from one of the medical examiners appointed by the society as a condition of its issue. If either the entire value or surplus be taken in cash, payment shall be made to the said James B. Donoho and his receipt shall be a valid release to the society. (6) In consideration of the agreement, as contained in the application for this policy, the dividend declared at the termination of the tontine dividend period, and thereafter if this policy shall remain in force, shall be based entirely upon the experience of the society upon free tontine policies. (7) For one year after the date of issue of this policy, travel and residence, by the person upon whose death this contract matures, in Mexico and in all portions of the torrid zone, and engagement in any of the following occupations or employment; blasting, mining, submarine labor, aeronautic ascensions, the manufacture, handling, or transportation of inflammable or explosive substances, service upon any railroad train, or in switching, or in coupling cars, or on any steamboat, or other vessel or boat, or military or naval service (the militia in time of peace excepted), will render this

policy void.    (8) Under this policy, after one year from its register date of issue, there are no restrictions upon travel, residence, or occupation, except service in war.    In case of death from service in war, the net reserve of this policy (computed according to the American Experience Table of Mortality, taking interest at four per cent per annum), will be paid."

Upon the completion of the tontine period of ten years, the maturity of the policy, appellant availed himself of the option mentioned first in order in provision 5 above set out, and withdrew in cash the policy's entire share of the assets, namely, the accumulated reserve, which was $5774.80, and in addition thereto the surplus apportioned by the company to this policy, to wit, $960.70, making the total amount received by appellant $6735.50.    That the $960.70 correctly represented the entire accumulated surplus of this policy, and that the amount paid was the full amount due under the terms of the policy, according to the plan of settlement chosen by appellant in the exercise of his option, is fully conceded.

The only contention here as to the facts is, whether there was any evidence adduced tending to show that the agent of the company who secured the application from the assured induced him to make the application and take out the insurance by falsely representing and causing him to believe that the surplus would be $1765.20.    Appellant's counsel contends, as to this point, that there was an issue under the evidence which should have been submitted to the jury for determination, while appellee's counsel urge that there was no evidence tending to show any false representations by the agent, and therefore there was no issue of fact for the jury.    The evidence shows that when the agent solicited and obtained the application for insurance he presented to appellee a statement, signed by himself as agent; that appellant examined it, believed it to be true, and that he testified that he was influenced by it in taking out the insurance.    This is the statement furnished:

"THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES,
HENRY B. HYDE, PRESIDENT.

"The advantages of a free tontine policy, shown by an illustration based on the actual results of tontine savings fund policies which have already matured.

### "THE FREE TONTINE POLICY.

"Amount of policy, $10,000; tontine period, 10 years.
"Age, forty-nine; annual premiums...................... $773 00
"Total premiums paid in ten years...................... 7,730 00
"The policy holder has, at the end of the tontine period, the choice of six methods of settlements.    Of these the three most important are shown in the following illustration, the figures being given on the basis of the actual results of Tontine Savings Fund policies which have al-

·ready matured.   These figures will, of course, be modified by the future experience of the society, as compared with that of the past:

"1.   Cash value, consisting of reserve..........$5,774 80

    And surplus ........................ 1,765 20—$7,540 00

"2.   Paid-up value ........................         13,000 00

"3.   Cash surplus ......,...............         1,765 20

    Paid-up policy ........................         10,000 00

                               "J. W. Mason, Agent.

   "Dated at Clarksville, Texas, December 24, 1886."

Appellant was 49 years old at the time he was insured.

Following this illustration appeared these further statements:

"The Free Tontine Policy is a new form of assurance, but the principle of accumulation being the same as in tontine policies heretofore issued, the results can be no less than on tontine policies which have already matured, unless the future experience of the society should be less favorable than that of the past.   Some variation, however, must be expected from time to time in the rate of mortality, the rate of interest, and other variable quantities.   It must be noted, also, that after the first year absolute freedom as to travel, residence, and occupation is granted to the holder of a free tontine policy, ·who enjoys, moreover, many additional benefits, denied under all other forms of assurance.

"Making reasonable allowance for such differences, those seeking assurance will find that an illustration based on past experience furnishes the most reliable data upon which to form an opinion as to the probabilities of the future.

"Note.—The society gives at the end of the tontine period the entire 'reserve' in cash if desired, and its exact amount may be written in the policy when issued.   The 'surplus' computed under the equitable rules of the society is also guaranteed, but its exact amount can not be stated in advance."

This was a printed statement, except the date (day of the month), figures, and signature of the agent, these being written by the agent.

The policy itself contained the following provision:   "In consideration of the agreement as contained in the application for this policy, the dividend declared at the termination of the tontine dividend period, and thereafter if this policy shall remain in force, shall be based entirely upon the experience of the society upon free tontine policies."

The surplus accumulated on this policy at the end of the tontine period, as before stated, did not amount to that stated in the illustration furnished by the agent to appellant, namely, $1765.20, but only amounted to $960.70.   It was not shown that the estimate was not based upon the *actual results of Tontine Savings Fund policies which had already matured,* as was expressly stated to be the case.   It was not shown that the variation of the amount of the actual accumulated surplus from that estimated by the agent was not attributable to some *variation in rate of*

*mortality, rate of interest, or other variable quantities,* on account of which the assured was admonished in the statement that some variation might be expected from time to time.    Indeed, we fail to find any representation of fact, appearing in the statement, the literal truth of which is brought in question by the evidence.

There was evidence tending to show that at the time the policy was issued, and up to the year 1891, the company classified its policy holders as northern, intermediate, and southern, and that the northern and intermediate policy holders received larger dividends than the southern, the difference between the northern and southern being from 30 to 50 per cent in favor of the former, and that Texas policy-holders were classed as southern.    The evidence also tended to show that the basis of the illustration furnished assured, which showed an accumulated surplus of $1765.20, was the actual results of matured Tontine Savings Fund policies which were taken out by persons living in the East and North and classified as northern, and that the estimate was from 30 to 50 per cent too high for a policy classed as southern.    It was also shown that this classification was not made known to appellant; that he never learned of it until after his final settlement with the company, and all along believed that all the policy-holders stood upon the same footing in relation to dividends and accumulated surplus upon their policies. This plan or system of classification was abandoned at latest in 1891, if not as early as 1886.    No other or further representations than such as are contained in the printed and written statement heretofore fully set out were shown to have been made to appellant.

The character of the policy issued was a new form of insurance, and none of this character were issued prior to 1886.    It was not shown that any policy of this character, regardless of the section of country in which the assured lived when he took out the policy, had apportioned to it a greater surplus than was apportioned to appellant's policy for the same tontine period.    And it was not shown that the company had, at the time of the issuance of this policy, any such experience with matured tontine policies classed as southern as would have furnished a proper basis for an estimate of the surplus which would probably accumulate upon the particular policy in question.    It was not shown that the experience of the company with "free tontine policies" during the period covered by appellant's policy was as favorable as its past experience with the form of tontine policy, the results of which were made the basis of the statement complained of by appellant.    As a question of fact, we determine that there was no evidence which would be sufficient to support the conclusion that false representations of fact were made by the agent of the company to appellant at the time his application for insurance was procured, nor that said agent practiced any deceit upon appellant by means of which he was induced to take out the policy of insurance.    On the contrary, the evidence shows that said agent expressed merely the opinion of himself and the company as to the amount of surplus which would probably accumulate upon such a policy, giving the basis of the

opinion, and expressly warned appellant that the same basis would not be used nor govern in the apportionment of accumulated surplus upon this policy; that there were a number of causes which might make the result different, and that the surplus which would actually be apportioned would "be based entirely upon the experience of the society upon *free tontine policies,*" then a new and untried form of policy.

Treating the question, whether there was any evidence raising the issue of false representations and deceit, as one of law, we hold that there was no such evidence produced on the trial. Every representation made was literally true, as shown by the uncontradicted evidence, and there is no evidence that any deceit was practiced by the intentional concealment of facts with the purpose of inducing appellant to believe a state of things known by the agent to be false. Unless there was false representation as to the existence of facts, or deception practiced by the intentional concealment of material facts, no ground of recovery was shown by the evidence. Appellant had no right to regard the illustration shown him, in connection with the statements accompanying it, in any other light than the opinion of the company, formed upon the very basis disclosed to him, as to future results of such a policy. If the basis was incorrect or unsafe, as it now appears, that fact would not render the company liable.

We have discussed only the main question presented on the appeal. There are some other questions raised, but we find no error committed by the trial court, and deem it unnecessary to do more than to say that none of the assignments of error are well taken. Little v. Allen, 56 Texas, 133; Jackson v. Stockbridge, 29 Texas, 394; Borden v. Butler, 105 U. S., 553; Sawyer v. Prickett, 19 Wall., 146, 167; Development Co. v. Silva, 125 U. S., 247; Page v. Bent, 2 Metc., 371-574; Kerr on Fraud and Mistake, 83; Livermore v. Town Co., 50 S. W. Rep., 6; Bellairs v. Tucker, 6 Am. and Eng. Corp. Cas., 427-447; 1 Big. on Fraud, 535-539.

The judgment is affirmed.

*Affirmed.*

RAINEY, Associate Justice, being disqualified, did not sit in this case.