**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 1, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MHC MUTUAL CONVERSION
FUND, L.P., on behalf of itself and all
others similarly situated; CLOVER
PARTNERS, L.P.,

     Plaintiffs-Appellants,

v.

SANDLER O'NEILL & PARTNERS,
L.P.; FBR CAPITAL MARKETS &
CO.; SCOT T. WETZEL; WILLIAM
D. SNIDER; GUY A. GIBSON;
MICHAEL J. McCLOSKEY;
ROBERT T. SLEZAK; LESTER
RAVITZ; DR. JAMES H. BULLOCK;
JEFFREY R. LEEDS; BERNARD C.
DARRE; CROWE HORWATH LLP;
DENNIS R. SANTISTEVAN,

     Defendants-Appellees,

and

UNITED WESTERN BANCORP,
INC.,

     Defendant.

No. 13-1016

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:11-CV-00624-WYD-MJW)**

---

Jeffrey A. Berens of Dyer & Berens LLP, Denver, Colorado (Robert J. Dyer III and Darby K. Kennedy of Dyer & Berens LLP with him on the briefs), for Plaintiffs-Appellants.

Peter A. Wald of Latham & Watkins LLP, San Francisco, California (Matthew Rawlinson of Latham & Watkins LLP, Menlo Park, California and Pamela Robillard Mackey and Laura G. Kastetter of Haddon, Morgan and Foreman, P.C., Denver, Colorado, with him on the brief), for Defendants-Appellees Scot T. Wetzel, William D. Snider, Guy A. Gibson, Michael J. McCloskey, Robert T. Slezak, Lester Ravitz, Dr. James H. Bullock, Jeffrey R. Leeds, Bernard C. Darre, Dennis R. Sanitstevan, Sandler O'Neill & Partners, L.P., and FBR Capital Markets & Co.

Stanley J. Parzen of Mayer Brown LLP, Chicago, Illinois (James C. Schroeder, Dana S. Douglas, and Justin A. McCarty of Mayer Brown LLP with him on the brief), for Defendant-Appellee Crowe Horwath LLP.

---

Before **GORSUCH**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

When does section 11 of the Securities Act of 1933 impose liability on issuers who offer opinions about future events? The statute prohibits companies from making statements that are false or misleading. Establishing that an opinion about the future failed to pan out in the end may go some way to meeting that standard but it doesn't go all the way. After all, few of us would label a deeply studied, carefully expressed, and earnestly held opinion about the future as false or misleading at the time it's made simply because later events proved it wrong. To establish liability for an opinion about the future more is required. But what? Answering that question is the challenge posed by this case.

The parties take us back to the immediate aftermath of the 2008 financial crisis. In 2009, Bancorp sought to conduct a secondary stock offering to raise about $90 million. In its securities filings the company alerted potential investors that it had significant investments in mortgage backed securities — and that these investments had suffered badly during the financial crisis when so many homeowners defaulted on their loans. The company disclosed, too, that it had already taken $47 million in losses on its investments. At the same time, the company stated that it had conducted internal analyses and consulted independent experts and now expected the level of delinquencies and defaults to level off and the market for its securities to rebound soon. But the company also stressed that if adverse market conditions persisted longer than the company expected it would have to recognize further losses. As we all know now, Bancorp's opinion about the immediate future didn't bear out. The economy remained in a deep recession — a recession that turned out to be perhaps longer and more severe than any since the Great Depression. So it was that in the fifteen months after the offering, as the market remained in the doldrums, the company had to recognize about $69 million more in losses — or what generally accepted accounting principles (GAAP) call "other than temporary impairments" (OTTI) — in its mortgage backed security portfolio.

This lawsuit followed. In it the plaintiffs alleged that the opinion the company rendered in its offering statement about the prospects for its securities portfolio was false and should give rise to liability under section 11. But the district court disagreed, holding that Bancorp's failed market predictions, without more, weren't enough to trigger liability. While opinions can be held false or misleading under section 11, the court explained, they can be only in a limited situation: when the speaker doesn't sincerely hold the opinion he expresses at the time he expresses it. Only then is it fair to declare an opinion false or misleading. And, the court held, the complaint in this case failed to allege so much, nowhere plausibly suggesting that the defendants didn't believe the opinions they offered at the time they offered them. With that, the district court dismissed the plaintiffs' suit and we have this appeal.

*

Section 11 creates a cause of action for investors when a registration statement "contain[s] an untrue statement of a material fact" or omits "a material fact . . . necessary to make the statements therein not misleading." 15 U.S.C. § 77k. Liability extends to those who (like several of the defendants before us) sign, certify, or underwrite the registration statement. 15 U.S.C. § 77k(a)(1), (4), (5).

All the statute's talk about *facts* — hinging liability as it does on "untrue statements of fact" or omissions of "material fact" — naturally invites the

- 4 -

question:  are *opinions* ever the stuff of section 11 liability?  The question becomes more lively still when one recalls that in 1933 when Congress passed section 11, it was "stated very often as a fundamental rule in connection with all of the various remedies for misrepresentation, that they will not lie for misstatements of opinion, as distinguished from those of fact."  William L. Prosser, *Law of Torts* § 109, at 720-24 (4th ed. 1971); *see also Gordon v. Butler*, 105 U.S. 553, 557 (1881); *F.B. Connelly Co. v. Schleuter Bros.*, 220 P. 103, 105 (Mont. 1923) ("It is the general rule that to constitute actionable fraud the misrepresentation must relate to an existing fact or a fact which has existed, thereby excluding mere expressions of opinion.").

Of course, the dichotomy these authorities drew between facts and opinions is far from unassailable.  It seems fair to say, for example, that an expression of opinion often conveys at least one fact — the fact that the speaker *believes* what he is saying when he says it.  "[E]very assertion of the existence of a thing is a representation of the speaker's state of mind, namely, his belief in its existence." Restatement (Second) of Torts § 525 cmt. d (1977); *see also* Restatement (First) of Torts § 525 cmt. c (1938); *Seven Cases v. United States*, 239 U.S. 510, 517 (1916) ("[S]tate of mind is itself a fact, and may be a material fact, and false and fraudulent representations may be made about it.").

All the same, many common law authorities took a dim view of opinion liability.  No one should depend on the puffery of salesmen, the thinking went,

especially when the salesman's offering a guess about the future or when you're

afforded the chance to inspect the goods for sale yourself. Even if an opinion

does contain a factual representation (*I believe . . .*). Even if that representation is

false (the speaker *doesn't* really believe what he says he believes). Speaking in

the language of misrepresentation doctrine's essential elements, one might say the

law at the time looked dubiously on liability for failed opinions less because

opinions fail to convey a statement of fact and more because any seller's opinion

should be thought immaterial by a buyer or not the sort of thing a buyer might

justifiably rely upon. Emblematic of this spirit of *caveat emptor* was Justice

Holmes's opinion in *Deming v. Darling*, 20 N.E. 107 (Mass. 1889):

> It is settled that the law does not exact good faith from a seller in those vague commendations of his wares which manifestly are open to difference of opinion, — which do not imply untrue assertions concerning matters of direct observation, and as to which it always has been understood, the world over, that such statements are to be distrusted.

*Id.* at 108 (internal quotation marks and citations omitted); *see also Mosher v.*

*Post*, 62 N.W. 516, 516 (Wis. 1895); *Chrysler v. Canaday*, 90 N.Y. 272, 279

(1882); Prosser, *supra*, at 721 (citing examples).

Some contemporaneous scholars clearly thought the Securities Act of 1933

embraced this same view. *See, e.g.*, Harry Shulman, *Civil Liability and the*

*Securities Act*, 43 Yale L.J. 227, 236 (1933) ("If a buyer relies on an opinion

expressed by a seller, he is a fool and has his own folly, not the seller's

deceitfulness, to blame for his loss."). Suggestively, too, the SEC itself for years

prohibited companies from issuing "[c]onjectures and speculations as to the

future" — precisely the sort of opinion at issue in this case — because it believed

the typical investor "as competent as anyone to predict the future from the given

facts." *See* Harry Heller, *Disclosure Requirements Under Federal Securities*

*Regulation*, 16 Bus. Law. 300, 307 (1961).[1]  If section 11's terms were best

understood in this light, the resolution of this appeal would of course be pretty

simple.  To the extent the plaintiffs complain about the defendants' opinion about

future events, there could be no liability.

*

Still, this is only one of at least three possible readings of section 11 when

it comes to opinion liability.  And the second possible reading we've already

hinted at.  Though section 11 creates a cause of action only for untrue or

misleading factual statements or omissions, an opinion can qualify as a factual

claim by the speaker regarding his current state of mind.  In offering an opinion,

after all and again, a speaker is making the factual statement that *he believes*

something.  By 1933, moreover, at least some common law courts had embraced

---

[1]  The SEC's guidance changed in the 1970s.  But even then at least some courts continued to deem opinions about future events immaterial as a matter of law.  *See, e.g.*, *Raab v. Gen. Physics Corp.* 4 F.3d 286, 290 (4th Cir. 1993).  And Congress essentially followed suit by statute, enacting a safe harbor provision for forward-looking statements accompanied by cautionary statements or made without actual knowledge of falsity.  15 U.S.C. §§ 77z-2, 78u-5.

just this notion, accepting that a statement about one's beliefs could give rise to a claim for misrepresentation in at least some circumstances. *See, e.g.*, *Vulcan Metals Co. v. Simmons Mfg. Co.*, 248 F. 853, 856 (2d Cir. 1918) (L. Hand, J.) ("An opinion is a fact, and it may be a very relevant fact; the expression of an opinion is the assertion of a belief."); *Dorr v. Cory*, 78 N.W. 682, 684 (Iowa 1899) ("[W]here statements as to value are mere matters of opinion and belief, no liability is created by uttering them, but . . . such statements may be, under certain circumstances, affirmations of fact. When known to the utterer to be untrue, if made with the intention of misleading the vendee, if he does rely upon them, and is misled to his injury, they avoid the contract." (internal quotation marks omitted)).

Of course, opinions about future events don't purport to be more than "provisional hypotheses, incompletely tested" and so they cannot be deemed "false" simply because they fail to pan out. Letter from Judge Learned Hand to Justice Oliver Wendell Holmes (June 22, 1918), *in Reason and Imagination: The Selected Correspondence of Learned Hand* 68 (Constance Jordan ed., 2013). For centuries legions accepted Newtonian physics without qualification. Last year some of us fervently believed the Broncos would win the Super Bowl. In 2008, no doubt there were those who genuinely thought the market for mortgage backed securities would soon rebound. Events have disproved each of these opinions, but

that hardly means the opinions were anything other than honestly offered — *true* opinions at the time made.

To warrant liability on this view, then, a plaintiff must show *both* that the defendant expressed an opinion that wasn't his real opinion (sometimes called "subjective disbelief") *and* that the opinion didn't prove out in the end (sometimes called "objective falsity"). Showing that the speaker professed an opinion he didn't hold provides the requisite false or misleading statement of fact; showing that the opinion failed in the world helps demonstrate its materiality — after all, it's hard to see how an insincere opinion that does prove out could hurt anyone relying on it.

Addressing an analogous provision — section 14 of the Securities Exchange Act — the Supreme Court seems to have adopted just this understanding. In *Virginia Bankshares v. Sandberg*, the Court held that to establish liability a plaintiff must prove that a challenged opinion turned out to be objectively false in the world — and, in doing so, the Court also expressly took as given that the plaintiff must show the opinion wasn't subjectively believed at the time offered. 501 U.S. 1083, 1097 (1991); *see also id*. at 1108-09 (Scalia, J., concurring). Following this lead, most of the courts of appeals addressing opinion liability in the section 11 context after *Virginia Bankshares* have held proof on both these scores essential to recovery, just as the district court did in

our case.[2]  At least some securities scholars, too, have endorsed these

developments.  *See, e.g.*, 4 Thomas Lee Hazen, *The Law of Securities Regulation*

---

[2]  *See, e.g.*, *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011) ("[W]hen a plaintiff asserts a claim under [the Securities Act] based upon a belief or opinion . . . liability lies only to the extent that the statement was both objectively false and disbelieved by the defendant at the time it was expressed."); *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009) (alleged misleading opinions "can give rise to a claim under Section 11 only if the complaint alleges with particularity that the statements were both objectively and subjectively false or misleading"); *Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 315 (4th Cir. 2004) ("[A] statement of opinion may be a false factual statement if the statement is false, disbelieved by its maker, and related to matters of fact which can be verified by objective evidence."); *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 670 (5th Cir. 2004) ("A statement of belief is only open to objection where the evidence shows that the speaker did not in fact hold that belief and the statement made asserted something false or misleading about the subject matter."); *Mayer v. Mylod*, 988 F.2d 635, 639 (6th Cir. 1993) (opinions are actionable "if the speaker does not believe the opinion and the opinion is not factually well-grounded").

Recently, the Sixth Circuit suggested that objective falsity alone, without more, is enough.  *See Indiana State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d 498 (6th Cir. 2013), *cert. granted*, 134 S. Ct. 1490 (2014).  In doing so, though, the Sixth Circuit didn't address its own prior decision in *Mayer* holding that both objective falsity and subjective disbelief are required.  *See* Drew D. Dropkin, *Important Conflict Being Overlooked in Omnicare Case*, Law360 (Mar. 6, 2014, 1:21 PM), http://www.law360.com/articles/515987/important-conflict-being-overlooked-in-omnicare-case.  And, as we've seen, *Omnicare*'s result stands in a good deal of tension with the common law, securities law authorities, and experience suggesting that the failure of an opinion about future events to materialize, without more, doesn't establish that the opinion was a false or misleading statement of fact at the time it was made.  Indeed, we are aware of no other court of appeals to have adopted the view *Omnicare* did; that case is now the subject of Supreme Court review; and the Solicitor General has recommended the Supreme Court repudiate its approach.  Br. for the United States as Amicus Curiae in Support of Vacatur and Remand at 6, *Omnicare*, 134 S. Ct. 1490 (No. 13-435) ("[T]he court erred in suggesting that a statement of opinion is actionable whenever it is ultimately proved incorrect.").

§ 12.9[4] (6th ed. 2009) ("Reading the relevant securities cases yields the following general rule:  while a good faith opinion (or even 'puffing') is not material, a statement of opinion made with no belief in its truth is actionable.").

Applying this second understanding to section 11 once again yields trouble for the plaintiffs in our case.  The plaintiffs do not include any plausible allegations in their complaint suggesting that the defendants' expressed opinion wasn't their true opinion.  To be sure, the defendants' opinion about the future wound up failing spectacularly — and to be sure that may supply *some* evidence speaking to the question whether the opinion was sincerely held at the time it was offered.  But the failure of an opinion about future events just isn't enough, standing all by itself, to suggest plausibly that the opinion was an insincere (or untrue or misleading) one.  Life simply holds too many examples of earnestly held but spectacularly wrong predictions about the future to permit such an inferential leap.[3]

---

[3] *See, e.g.*, Lord May, Royal Society Anniversary Address, Dec. 2003, quoting Lord Kelvin (1895), ("Heavier than air flying machines are not possible."); *but see* Letter from Orville Wright to George A. Spratt (June 7, 1903), *in Miracle at Kitty Hawk:  The Letters of Wilbur and Orville Wright* 92 (2d ed. 2002) ("If we all worked on the assumption that what is accepted as true is really true, there would be little hope of advance."); *see Atom Energy Hope Is Spiked by Einstein*, Pittsburgh Post-Gazette, Dec. 29, 1934, at 13 ("The idea that man might some day utilize the atom's energy brought the only emphatic denial from [Einstein]."); *but see* Letter from Albert Einstein to President Franklin D. Roosevelt (Aug. 2, 1939), *excerpted in* John Bartlett, *Familiar Quotations* 763 (15th ed. 1980) ("Some recent work by E. Fermi and L. Szilard . . . leads me to expect that the element uranium may be turned into a new and important source of

(continued...)

Plaintiffs reply that reading section 11 as authorizing an inquiry into a speaker's subjective belief would render surplusage the statute's due diligence (or "reasonable investigation") defense. *See* 15 U.S.C. § 77k(b). Plaintiffs make a similar argument regarding the statute's safe harbor provisions about forward-looking statements. *Id.* § 77z-2(c). In doing so, however, plaintiffs paradoxically suggest that this second reading of section 11 and the avenue to liability it provides for statements of opinion should be closed even to other plaintiffs who *can* present evidence of subjective disbelief. Neither is the plaintiffs' suggestion well taken on its own terms. The due diligence and safe harbor provisions protect even statements already proven false — statements that would otherwise be sufficient to trigger section 11 liability. Meanwhile, we face here the antecedent question what it takes for an opinion to be false or misleading — what it takes to trigger section 11 in the first place. So it is that these provisions continue to do different work; nothing is surplus. *See, e.g.*, *Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 327 (S.D.N.Y. 2012) ("[T]his reading . . . is

---

[3](...continued)
energy in the immediate future."); *see Rocket to Moon? Dim Chance*, Sci. Dig., Aug. 1948, at 42 ("Landing and moving about on the moon offer so many serious problems for human beings that it may take scientists another 200 years to lick them."); *but see* Neil Armstrong, July 20, 1969, *quoted in* Bartlett, *supra*, at 910 ("The Eagle has landed.").

- 12 -

entirely consistent with the Structure of the Securities Act and the affirmative defenses that it makes available to defendants under Sections 11 and 12(a)(2).").[4]

\*

That still leaves at least one more possible reading of section 11 to consider. At common law today it is sometimes possible to pursue misrepresentation claims against fiduciaries and those who hold themselves out as experts when they offer opinions that lack an objectively reasonable basis. You may not expect used car salesmen to have an objectively reasonable basis for many of the claims they make on the showroom floor. But when you hire a lawyer to give you an opinion on an open question of law, you may expect her to conduct a reasonable amount of research or possess a sufficient degree of expertise and knowledge before she offers a prediction about the course of future legal proceedings — even if you can't reasonably expect her predictions to be perfect. On this view, at least some subset of opinions about future events contain within them an implicit factual warranty that they rest on an objectively reasonable basis — and providing an opinion without an objectively reasonable

---

[4] For example, the safe harbor provision exempts "forward looking statements" from liability except when the plaintiff can prove that the speaker *knew* the statement was false. But section 11 by itself imposes no such *knowing* misstatement requirement. Section 11 holds strictly liable those who make a false statement of fact. On this view, an opinion is a false statement when it does not reflect the belief of the speaker. And without the safe harbor, liability attaches even if one *innocently* misstates one's actual opinion. Under the safe harbor, however, the speaker avoids liability if the plaintiff is unable to show the speaker *knew* the statement was false at the time it was made.

foundation, at least without disclosing that deficiency, can give rise to a claim for negligent misrepresentation. Certainly many common law authorities today endorse an approach along these lines. *See, e.g.*, Restatement (Second) of Torts §§ 542, 552 cmt. e. And at least some courts seem to contend for a similar approach in the securities context, though it is difficult to find many actually holding a security issuer liable on this basis,[5] and though the approach has been questioned by others on various grounds.

In the first place, some wonder whether this approach is consistent with the Supreme Court's teachings. As the defendants note, *Virginia Bankshares* seemed

---

[5] Indeed, many securities cases tending in this direction seem to have imposed something more like a recklessness standard than the negligence standard found in common law cases. The plaintiffs in this case, of course, hardly wish us to adopt a recklessness standard and, for that matter, the statutory provenance for such a standard is less than entirely clear. *See, e.g.*, *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989) (liability only for unqualified optimistic statements made with conscious disregard of substantial risk that investors would be misled); *Helwig v. Vencor, Inc.*, 251 F.3d 540, 558 (6th Cir. 2001) (defendants had actual knowledge their statements were misleading), *overruled in part on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007); *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 775 (1st Cir. 2011) ("An opinion may still be misleading if it . . . lacks *any* basis." (emphasis added)); *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 266 (2d Cir. 1993) (asking whether the opinion was made "without a basis in fact"); *In re Alexander Reid & Co.*, 40 S.E.C. 986, 990 (1962) ("A broker-dealer cannot avoid responsibility for unfounded statements of a deceptive nature, *recklessly made*, merely by characterizing them as opinions or predictions or by presenting them in the guise of a probability or possibility." (emphasis added)); *Weiss v. SEC*, 468 F.3d 849, 855 (D.C. Cir. 2006) (finding liability for an opinion that lacked a reasonable basis but noting that the defendant "could not have been unaware of the substantial likelihood that" his opinion was false when made).

to endorse the subjective disbelief/objective falsity test and made no mention of an alternative path to liability for opinions. Of course, by endorsing one test the Court may not have meant to exclude other possibilities. But the omission at least raises questions about the Supreme Court's intended direction, perhaps especially when many circuit courts have understood *Virginia Bankshares* as endorsing only the subjective disbelief/objective falsity test. *See supra* n.2 (collecting cases).

Second, one may wonder about the consistency of this test with the statutory text and history. The text permits liability for false statements of fact or otherwise misleading statements. A speaker may make one statement of fact when he ventures an opinion — he may be stating the fact of his belief. But when a speaker offers an opinion does he also necessarily imply that he possesses an objectively reasonable basis for his opinion? Don't people often hold and express opinions based on reasons they find sufficient, even though they lack objective proof sufficient to satisfy others? How is an opinion false or misleading so long as it's earnestly held, even if supported by evidence sufficient to persuade only the speaker? Contemporary tort law may sometimes choose to treat fiduciaries and experts as supplying a *legally implied* warranty that their opinions are based on objectively reasonable grounds. But the statute before us doesn't speak of implications imposed by law. It requires a false or misleading statement to trigger liability. And a good deal of common law at the time of section 11's

enactment suggested that a true and non-misleading opinion is one "founded upon what *appears to the defendant* to be reasonable and certain grounds." *Krause v. Cook*, 108 N.W. 81, 83 (Mich. 1906) (emphasis added). The presence of an objectively reasonable basis could be used to show the sincerity of the defendant's belief. *See, e.g.*, *Cranfill v. Hayden*, 55 S.W. 805, 811 (Tex. Ct. Civ. App. 1900) ("What better way is there to establish good faith and honest belief than to show a reasonable basis upon which they were founded?"). But the absence of an objectively reasonable basis wasn't necessarily enough to establish liability for misrepresentation so long as a sincere belief existed. *See* Restatement (First) of Torts § 552 first caveat (highlighting that the First Restatement "express[ed] no opinion" on whether liability should attach to someone who fails to exercise reasonable care and competence in forming an opinion but honestly believes it to be true).

Third, the plaintiffs' position depends on a view of securities issuers as analogous to fiduciaries. Many common law authorities today are willing to imply a warranty of objective reasonableness when a fiduciary offers a professional opinion. And many may view securities issuers as standing in a similar relationship to investors. But not everyone has always conceived of securities issuers as learned fiduciary agents whose opinions reasonable investors do or should accept uncritically. As we've seen, some early commentators and the SEC itself for some time at least seemed to conceive of issuers as more like

- 16 -

sellers of goods whose crystal balls are thought no better than anyone else's. *See* Shulman, *supra*, at 236; Heller, *supra*, at 307; *cf. In re Franchard Corp.*, 42 S.E.C. 163, 178 (1964) ("To generally require information in Securities Act prospectuses as to whether directors have performed their duties in accordance with the standards of responsibility required of them under State law would stretch disclosure beyond the limitations contemplated by the statutory scheme and . . . either result in self-serving generalities of little value to investors or grave uncertainties both on the part of those who must enforce and those who must comply with that Act.").

Finally, some question whether the goal of investor protection would, on a net basis, be enhanced by expanding opinion liability in this way. Requiring more extensive disclosure of evidence tending to undermine a sincerely held opinion may, in the view of some, do more to invite information overload than materially benefit the consumer. *See* Frank H. Easterbrook & Daniel R. Fischel, *Mandatory Disclosure and the Protection of Investors*, 70 Va. L. Rev. 669, 709 (1984); *see also TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 448-49 (1976) ("[M]anagement's fear of exposing itself to substantial liability may cause it simply to bury the shareholders in an avalanche of trivial information — a result that is hardly conducive to informed decisionmaking.").

For our present purposes, however, we don't have to resolve any of these questions. We can assume with the plaintiffs that the objectively reasonable basis

test is at least an available (if not exclusive) one. We can because even under the terms of this test the outcome in our case does not change. The plaintiffs' complaint still fails — and does so for at least two reasons.[6]

First, even viewing the allegations in the complaint generously, the defendants' challenged opinion was supported by information a reasonable issuer of securities could rely on. Plaintiffs concede that in issuing its opinion about the future market prospects for its securities portfolio, Bancorp relied not just on its own internal forecasting but consulted multiple outside independent investment

---

[6] The plaintiffs suggest that this court has already endorsed liability under the objectively reasonable basis test. We can't agree. They point to *Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168 (10th Cir. 2006). There, however, the court held that the plaintiffs failed to prove either subjective disbelief or the lack of an objectively reasonable basis — so the claim failed under any of the possible tests presented to the court. As a result (and much as here) nothing there hinged on the choice between tests. Neither did the court there discuss *Virginia Bankshares*, consider its impact, or address the argument presented by the defendants in this case that the Supreme Court's decision precludes the objectively reasonable basis test for opinion liability. In these circumstances, we do not read *Deephaven* as mandating the use of the objectively reasonable basis test. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."). Separately, plaintiffs point to our decision in *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1120 n.6 (10th Cir. 1997). There we did address *Virginia Bankshares* but stated that "[t]he Supreme Court in *Virginia Bankshares v. Sandberg* made it quite clear that a statement as to beliefs or opinions . . . may be actionable if the opinion is known by the speaker at the time it is expressed to be untrue or to have no reasonable basis in fact." (citation omitted). Not only does this passage appear in a footnote of clearly demarcated dicta, it seems to suggest a speaker must be reckless in his expression of opinion (*know* that his statement lacks any reasonable basis in fact), an interpretation of section 11 the plaintiffs (again) do not wish us to endorse.

analysts who reached the same conclusion about the company's portfolio. The plaintiffs identify no authority suggesting that an issuer's opinion about the market prospects for securities held by a company lacks a reasonable basis when multiple and independent expert analysts who study the company's portfolio reach the same view. Instead, the plaintiffs argue that the company "shopped around" for analysts that it thought might share its opinion about market conditions and the future prospects for its securities. But the plaintiffs don't allege facts suggesting that the analysts in this case rendered anything other than their sincerely held and independently reached judgments. Or that they were anything less than expert. Without some factually supported allegation along those lines — without any reason to think, for example, their views were inexpert or compromised — we are left to infer only that some genuinely independent experts in the field shared the company's views and others did not. And that much serves only to confirm rather than undermine the conclusion that the company's opinion had a reasonable (if not universally shared) basis for the opinion it expressed. *See generally Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1535-36 (10th Cir. 1996) ("[P]rofessional negligence laws" characteristically require "that degree of skill, knowledge, and judgment ordinarily possessed by a member of the . . . profession at the time the task is undertaken."); Restatement (Second) of Torts § 552 cmt. e ("[T]he recipient is entitled to expect that such investigations as are necessary will be carefully made and that his informant will

have normal business or professional competence to form an intelligent judgment upon the data obtained.").

Second, even under this view of section 11 liability the opinions fiduciaries offer won't often give rise to liability if they clearly convey the limits of the work done to reach them. After all, misrepresentation claims are aimed at avoiding situations where the listener is misled, not with replacing fiduciary duty claims or ethics rules. So long as the speaker discloses that only certain clearly limited bases support his opinion, he can't be easily faulted for implying the existence of others. So, for example, an attorney who is asked to render an opinion in a short period may do much to avoid liability by delineating the limits of his research, indicating further areas meriting exploration that could change his opinion, and noting that his efforts are preliminary. *See, e.g.*, *United States v. Nacchio*, 519 F.3d 1140, 1161 (10th Cir. 2008) ("[T]he more a speaker qualifies a statement, the less people will be misled if the statement turns out to be false."), *vacated in part on other grounds*, 555 F.3d 1234 (10th Cir. 2009) (en banc); *Beardsley v. Ernst*, 191 N.E. 808, 810 (Ohio Ct. App. 1934) ("It is obvious that the accountants in this case could not know whether or not the information from abroad was accurate or inaccurate, and, inasmuch as they disclose that these certificates were based partly upon information so received, there was no pretense of knowledge as to the information received which would make defendants liable."); Restatement (Second) of Torts § 552 illus. 3.

That's essentially what the company did in this case. Bancorp clearly disclosed that it had already been forced to take some OTTI charges; that its opinion it could avoid future OTTI charges rested on an assumption the housing market would improve in the near future; and that in the event the housing market didn't improve soon the company could incur additional OTTI charges. All this placed investors on notice that the company's opinion about the prospects for its securities wasn't unqualified — that an essential premise of the opinion rested on a judgment about near-term economic trends, a judgment that could well fail to bear out. Given all this, we fail to see how a reasonable investor could have been misled. Indeed, courts have long declined to permit liability in highly analogous circumstances. *See, e.g.*, *Virginia Bankshares*, 501 U.S. at 1097 ("[T]rue statements may discredit the other one so obviously that the risk of real deception drops to nil."); *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1121 (10th Cir. 1997) (optimistic prediction regarding market prospects was inactionable when "made in conjunction with a registration statement that contained many explicit risk factors and warnings"); *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 371-72 (3d Cir. 1993) ("Because of the abundant and meaningful cautionary language contained in the prospectus," a reasonable investor could not find company's opinion about its future prospects misleading); *Rubinstein v. Collins*, 20 F.3d 160, 170 (5th Cir. 1994); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir. 1997) ("Only by discarding common sense and ignoring the multitude of explicit

- 21 -

and on-point warnings contained in Gateway's prospectus could investors have been misled . . . .").

*

With so much against them at this point in the proceedings, the plaintiffs seek to open a new front.  Now they contend that the defendants' statements about the future prospects of the company's mortgage backed securities weren't opinions at all — but facts.  If they can't scale the wall to opinion liability, the plaintiffs tell us they shouldn't have to.  Instead, we should hold that the defendants' statements in this case were ones of mere fact, not opinion, so they can be proven false or misleading simply by showing that as an objective matter they didn't prove out in the world.

This move takes us into the tricky business of distinguishing opinions from facts.  Where to draw the line?  Some commentators have rightly observed that the line between opinion and fact isn't always a bright one.  *See, e.g.*, Leon Green, *Deceit*, 16 Va. L. Rev 749, 767 (1930); Wendy Gerwick Couture, *Opinions Actionable as Securities Fraud*, 73 La. L. Rev. 381, 384 (2013).  And for our part we concede we can do no better at drawing that line than the Restatement (Second) of Torts.  It explains that

> [a] representation of fact is a positive assertion [that something] is true.
> It implies that the maker has definite knowledge or information which
> justifies the positive assertion.  A representation of opinion, on the
> other hand, is only one of the maker's belief . . . .  It implies that he

- 22 -

> does not have definite knowledge, that he is not sufficiently certain of what he says to make the positive statement . . . .

Restatement (Second) of Torts § 538A cmt b. Opinions likewise may involve the speaker's normative beliefs or represent the speaker's exercise of reasoning and inference to form conclusions from evidence. *Id*. § 538A ("A representation is one of opinion if it expresses only . . . his judgment as to quality, value, authenticity, or other matters of judgment.").

As all this implies, our inquiry focuses on substance, not form alone. Language like "We think," "We believe," or "In our opinion" may put the reasonable investor on notice that what follows should not be treated as certain. But while such language may usually suggest an opinion follows, it doesn't guarantee it — issuers cannot avoid liability by liberally sprinkling prefatory labels throughout a prospectus or simply tacking them onto everything they say. "[N]ot every sentence that has the word 'opinion' in it, or that refers to motivation for directors' actions, leads us into this psychic thicket. Sometimes such a sentence actually represents facts as facts rather than opinions." *Virginia Bankshares*, 501 U.S. at 1109 (Scalia, J., concurring). Conversely, it's equally true that statements not preceded by the word "opinion" can nevertheless represent opinions rather than facts. *See id*. at 1090-91 (majority opinion). Labels may provide a starting point but they don't always exhaust the analysis.

In approaching the allegations in this case, we have the benefit not just of the Restatement's general guidance but the benefit as well of some more particular guidance supplied by courts who have come this way before us. Many have already held that discussions in registration statements about concentrations of risk, loan loss reserves, goodwill, and investment ratings can and do often qualify as opinions. And it is hard to see a principled basis for calling discussions of those matters "opinions" while calling a discussion concerning the future market prospects for a company's investment portfolio a "fact." *See, e.g.*, *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1203 (10th Cir. 2013); *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 111 (2d Cir. 2011); *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 775 (1st Cir. 2011).

Indeed, the statements in each of these cases had certain hallmarks in common — hallmarks shared by the statement in our case too. None of the statements in those cases was definite; all were qualified; all provided reasonable notice to the recipient that the speaker might be wrong. As well, each necessarily required the speaker to exercise judgment about matters on which reasonable minds could well come to different conclusions. In our case, the defendants likewise represented that they thought the company's mortgage backed securities were likely to rebound in the near term, but warned they could prove wrong, and the statement the defendants offered necessarily implicated a heavy degree of

judgment — about present and future conditions in the housing market in general and the prospects for the individual securities in the company's portfolio in particular. In all these ways it's hard to see much daylight between our case and those that have come before it, not least *Virginia Bankshares*. There, the Supreme Court held that the defendants' statement — that shareholders would receive a "high value" in a prospective merger — represented an opinion because the defendants' statement was an "indefinite and unverifiable term" and required "judgment." 501 U.S. at 1093 (internal quotation marks omitted). Here, the defendants similarly offered a judgment about the future potential value of securities — a judgment also clearly demarcated as an opinion, and one that by its nature is indefinite and unverifiable.

In reply to all this, the plaintiffs stress that Bancorp's statement in this case was the product of an analysis it conducted in accord with generally accepted accounting principles. The plaintiffs note, too, that GAAP delineates certain specific factors that must be considered in reaching judgments about potentially impaired securities holdings. *See, e.g.*, *FASB Accounting Standards Codification*, Topic 320, Sub-topic 10, ¶¶ 35-33F-G. But the fact one does or must follow a particular structure or discipline before rendering an opinion doesn't by itself convert the resulting opinion into a fact. After all, sophisticated sports and electioneering prognosticators often follow serious disciplines before rendering opinions about future events, but that doesn't suddenly make their predictions

"facts."  *See, e.g.*, Nate Silver, *The Signal and the Noise:  Why So Many Predictions Fail — But Some Don't* (2012).  Indeed, while GAAP sometimes dictates a single right answer it's not infrequently the case that it "tolerate[s] a range of 'reasonable' treatments" and leaves the final choice among them a matter of judgment or opinion.  *Thor Power Tool Co. v. Comm'r*, 439 U.S. 522, 544 (1979).

*

Beyond plaintiffs' section 11 claim lies their section 10(b) claim still to be addressed.  To plead a claim under section 10(b), this court has long explained that a complaint must allege facts suggesting (among other things) that the defendant made an untrue or misleading statement of material fact with intent to defraud or reckless disregard for the truth.  *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012).  Plaintiffs must specify why the statement is misleading and "state with particularity facts giving rise to a strong inference that the defendants acted with scienter."  *Id*. at 1343 (discussing the Private Securities Litigation Reform Act of 1995) (internal quotation marks omitted).  "[T]he inference of scienter must be more than merely 'reasonable' or 'permissible' — it must be cogent and compelling, thus strong in light of other explanations."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

That much we do not have here.  The target of the plaintiffs' section 10(b) claim is once again the defendants' representations about the future prospects for Bancorp's mortgage backed securities.  But when it comes to alleging not just that those representations were false or misleading but were made with intent to defraud or in reckless disregard of the truth sufficient to trigger section 10(b) liability, the plaintiffs offer us very little.  They plead facts suggesting at most that the defendants possessed a motive and opportunity to mislead — allegations that this court has already indicated "are typically not sufficient in themselves to establish a 'strong inference' of scienter."  *City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1263 (10th Cir. 2001).

Neither is there anything to take this case outside the realm of the typical.  Not only do plaintiffs fail to include factual allegations extending beyond motive and opportunity.  Even the allegations they offer on those scores are not exactly compelling.  For example, the complaint alleges that the defendants shared the corporation's general motive to make the company look good — all to facilitate a stock offering to raise "badly needed" capital.  But the complaint doesn't allege that the defendants themselves stood to gain personally from the offering.  So to hold plaintiffs establish scienter here we'd have to suggest scienter is present in nearly any case involving a stock offering — after all, can't many companies offering stock for sale to the public be described as "badly needing" capital?  Motive allegations like these — depending as they do on "generalized motives

- 27 -

shared by all companies" — are "unavailing" when it comes to suggesting cogently and compellingly an intent to defraud or reckless disregard for the truth. *Fleming*, 264 F.3d at 1269.

Similarly, the complaint alleges that, as part of their jobs, the defendants attended regular meetings at which market conditions and disclosures about them were discussed. In this way, the complaint suggests the defendants had not just a general corporate motive to lie but the opportunity to do so. More than this, however, we do not have. The plaintiffs allege no facts plausibly suggesting that anyone proposed or enacted a plan to deceive investors in these meetings. When we're confronted with the twin possibilities that the defendants' predictions about the market were simply too optimistic or designed to mislead investors, nothing in the defendants' routine attendance at finance meetings serves to suggest a "cogent" and "compelling" inference of scienter. *See Tellabs, Inc.*, 551 U.S. at 324.

Perhaps the closest the plaintiffs come to sustaining their burden of pleading scienter may come in their allegations about Bancorp's interaction with regulators. The plaintiffs allege that the defendants were aware of communications from regulators expressing "concerns" about certain of Bancorp's accounting practices. But the communications at issue show that, despite exhaustive review of all of Bancorp's accounting, regulators did not identify any problems with Bancorp's accounting prior to September 30, 2010.

JA 1258 ("This memorandum does not address whether SEC filings of earlier periods should be amended.").  Meanwhile, this case focuses on accounting practices and representations made about them in 2008 and 2009.  It perhaps goes without saying that the defendants cannot be held liable for alleged misstatements in 2008 and 2009 based on errors that occurred after 2010.  Securities liability "cannot be imposed on the basis of subsequent events." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002).[7]

*

Having failed to state a claim in their amended complaint, plaintiffs fault the district court for dismissing it with prejudice rather than allowing them leave to replead.  But the district court already allowed the plaintiffs one amendment and the plaintiffs never filed a motion with the district court seeking a second. For our part, we find it difficult to charge the district court with an abuse of discretion for failing to permit a second amendment in these circumstances.  *See Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186-87 (10th Cir. 1999); *Brannon v. Boatmen's First Nat'l Bank of Oklahoma*, 153 F.3d 1144, 1150 (10th Cir. 1998).

The judgment is affirmed.

---

[7] Besides their section 11 claims, plaintiffs also brought claims under sections 12 and 15 of the Securities Act.  *See* 15 U.S.C. §§ 77k, 77l, 77o.  These claims are premised on the same conduct that plaintiffs alleged violated section 11 and fail for the same reasons stated above.